208 P.3d 614 (2009)
2009 WY 73
In the Interest of NDP, JAP, ANP and ICP, minor children,
CP, Appellant (Respondent)
v.
The State of Wyoming, Department of Family Services, Appellee (Petitioner).
No. S-08-0210.
Supreme Court of Wyoming.
June 3, 2009.
*615 Representing Appellant: Cynthia K. Sweet, Casper, Wyoming.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Susan K. Stipe, Senior Assistant Attorney General. Argument by Ms. Stipe.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
KITE, Justice.
[¶ 1] CP (Mother) appeals from the juvenile court's disposition order after she was found to have neglected her children. She claims the juvenile court erred by ruling that the Department of Family Services (DFS) did not need to make further efforts to reunify her with the children and ordering it to proceed with establishing a family guardianship.
[¶ 2] We affirm.

*616 ISSUES
[¶ 3] Mother presents two issues on appeal:
Did the District Court err in failing to state the standard of proof it applied in waiving reunification efforts?
Was sufficient evidence presented to support the District Court's ruling waiving reunification efforts?
The State's statement of the issues is similar.

FACTS
[¶ 4] Mother has four minor children, NDP, JAP, ANP and ICP.[1] The State took the children into custody on April 19, 2007, after Mother was arrested for violating her probation by testing positive for methamphetamine use. At that time, NDP was 13 years old, JAP was 12 years old, ANP was 7 years old and ICP was 5 years old. The State filed a petition alleging that the children were neglected, and the children were placed in foster care with their maternal aunt.
[¶ 5] DFS filed a family case plan on May 22, 2007, identifying family reunification as the permanency goal and stating that a permanency hearing would be held 12 months from the date of placement of the children outside the home. In part, the plan objectives required Mother to: 1) attend to her substance abuse needs by completing an Alcohol Severity Index (ASI), following the ASI recommendations, completing random urinary analyses (UAs) and abstaining from all illegal and non-prescribed drugs; and 2) attend to her mental health needs by completing a psychological evaluation, calling "Psych. Rehab" for a screening, and following all treatment recommendations. Mother did not sign that case plan and initially denied the neglect allegations.
[¶ 6] The multi-disciplinary team (MDT) held a meeting on June 20, 2007. The report from the meeting stated the DFS caseworker had asked Mother to complete a psychological evaluation and an ASI and submit to random UAs. The MDT agreed that, in addition to the goal of family reunification, a concurrent goal would be relative placement and/or guardianship. Although Mother did not sign the MDT report, her attorney signed it, indicating he agreed with the MDT recommendations.
[¶ 7] On July 20, 2007, the parties filed a stipulation and order for consent decree with the juvenile court. Mother admitted the neglect allegations, but the finding of neglect was held in abeyance pending her compliance with the consent decree pursuant to Wyo. Stat. Ann. § 14-3-428 (LexisNexis 2007).[2] *617 The order expressly stated that reasonable efforts had been made to reunite the children with their parents. The permanency plan continued to be reunification of the children with Mother, and she was ordered to comply with the DFS case plan. A predisposition report, also filed on July 20, 2007, reiterated Mother's responsibilities for completing substance abuse treatment and a psychological evaluation.
[¶ 8] Mother entered a residential substance abuse treatment facility known as Reflections on July 23, 2007, but failed to complete the program. Thereafter, Mother's probation was revoked and she was incarcerated until October 2, 2007.
[¶ 9] On October 5, 2007, Mother and DFS entered into another family services case plan. This time the plan required Mother to complete an inpatient drug treatment program with the Wyoming Substance Abuse Treatment and Recovery Center (WYSTAR) so that she could meet the plan's goal of leading a clean and sober lifestyle and, ultimately, be reunified with her children. It stated that another case plan would be developed after Mother completed treatment at WYSTAR. Mother agreed to this plan.
[¶ 10] While waiting to enter WYSTAR, Mother resided at Women's Heart and participated in an Intensive Outpatient Program. She was discharged from the program "due to an incident while traveling to Denver." She then lived with her mother until she was admitted to WYSTAR on October 17, 2007.
[¶ 11] Less than a month later, on November 13, 2007, Mother was discharged from WYSTAR without successfully completing the program. WYSTAR's report stated:
Please be advised that [Mother] did not complete the WYSTAR Residential Treatment Program and was discharged at staff request on this date. She has not appeared to be invested in treatment, and in spite of numerous attempts by staff to bring about behavior modification; including two formal staffings concerning her readiness to change (Dimension IV of the ASAM Criteria), she has been consistently unwilling to follow directives and has demonstrated a lack of readiness to change. [Mother] appears to be lacking insight concerning her behaviors and attitudes, to the extent that staff is concerned about her psychiatric stability. It appears that [Mother] is in need of a level of care that WYSTAR is not equipped to provide.
[¶ 12] The State filed a motion to reinstate the original neglect petition on December 5, 2007, because Mother had not complied with the terms of the consent decree. The district court granted the State's motion, entered Mother's earlier admission of neglect and ordered Mother to complete a psychological evaluation and follow the evaluator's recommendations.
[¶ 13] The parties entered into another family services case plan on March 24, 2008. Consistent with earlier plans, it listed reunification of the family as a goal and required Mother to complete a psychological evaluation, maintain sobriety demonstrated with random UAs, and complete another ASI.
[¶ 14] After evaluating her, a psychologist diagnosed Mother with several substance abuse issues and personality disorders. He recommended that Mother undergo substance abuse treatment and individual psychotherapy and that she contact her physician to "determine whether she would gain from medical interventions to reduce her symptoms." The psychologist also stated that Mother was not able to provide full-time care for her children, but, as long as she remained free from substance abuse, she could provide adequate care while visiting the children.
[¶ 15] The juvenile court held a disposition hearing on May 20, 2008. It ruled that the State had made reasonable efforts to reunite Mother and her children but its efforts *618 were unsuccessful. The court ruled that DFS did not need to make further efforts to reunify the children with Mother and ordered the agency to proceed with establishing a family guardianship of the children. Mother appealed from the district court's disposition order.

DISCUSSION

1. Standard of Proof
[¶ 16] Mother asserts that the juvenile court erred by failing to specifically state that it was applying the preponderance of the evidence standard in its rulings at the disposition hearing, particularly the ruling that DFS did not need to make further efforts to reunify the children with Mother. She seeks a remand to have the juvenile court make the proper ruling.
[¶ 17] It is well established that in neglect proceedings the State has the burden of proving the allegations by a preponderance of the evidence. AA v. Wyo. Dep't of Family Servs. (In re HP), 2004 WY 82, ¶ 25, 93 P.3d 982, 989 (Wyo.2004); DH v. Wyo. Dep't of Family Servs. (In re "H" Children), 2003 WY 155, ¶ 39, 79 P.3d 997, 1008 (Wyo. 2003). The preponderance of the evidence standard also applies to the juvenile court's determinations that reunification efforts have not been successful and it is appropriate to proceed with an out of home placement in accordance with a permanency plan. AA, ¶¶ 25-31, 93 P.3d at 989-91.
[¶ 18] Mother does not direct us to any statute or case law requiring the juvenile court to explicitly state the standard of proof at the disposition hearing. Furthermore, in order to obtain reversal of a juvenile court's ruling on the basis of a violation of a legal requirement, the appellant must show that she was prejudiced by the violation. DH, ¶ 24, 79 P.3d at 1003. Although the juvenile court did not specifically identify the standard of proof, the record clearly demonstrates that the juvenile court applied the preponderance of the evidence standard. The court advised Mother that the State had the burden of proving its allegations by a preponderance of the evidence at her initial hearing and again at the hearing where it accepted her admission of neglect pursuant to the consent decree. In light of our ruling, infra, that there was sufficient evidence to support the juvenile court's findings that the State had proven its case by a preponderance of the evidence, we can discern no prejudice in the juvenile court's failure to specify the standard of proof at the disposition hearing.

2. Sufficiency of the Evidence
[¶ 19] Mother challenges the sufficiency of the evidence to support the juvenile court's rulings that further reunification efforts were not necessary. When reviewing the juvenile court's findings, we employ the following standards:
1. Give considerable deference to the trial court's determination because it has the advantage to judge the demeanor and intelligence of the witnesses;
2. Examine the evidence in the light most favorable to appellee and resolve all conflicts in evidence for appellee;
3. Assume as true the evidence in appellee's favor, disregard entirely appellant's evidence in conflict with appellee's evidence, and give to appellee's evidence every favorable inference that may fairly be drawn.

DH v. Dep't of Family Servs. (In re "H" Children), 2003 WY 155, ¶ 54, 79 P.3d 997, ¶ 54 (Wyo.2003) (quoting MP v. State in Interest of CP, 965 P.2d 1155, 1157 (Wyo. 1998)).
AA, ¶ 17, 93 P.3d at 987.
[¶ 20] After the disposition hearing, the juvenile court ruled:
[I]t is neither appropriate nor in the best interest of the children for [them] to remain in [their] home. This finding was made with the knowledge that reasonable efforts were made to reunite the children with the children's family and/or reasonable efforts were made to make it possible for the children to return to [their] home.
The juvenile court continued:
IT IS . . . ORDERED that the permanency plan shall be waiver of reunification with [Mother and Father] and family guardianship and the Department of Family *619 Services is making reasonable efforts to achieve permanency.
IT IS FURTHER ORDERED that the Department of Family Services made reasonable efforts to reunify the minor children with [Mother and Father] and those efforts were unsuccessful.
[¶ 21] Wyo. Stat. Ann. § 14-3-440 (LexisNexis 2007) governs reunification efforts:
(a) Except as provided in W.S. 14-2-309(b) or (c), reasonable efforts shall be made to preserve and reunify the family:
(i) Prior to placement of the child outside the home, to prevent or eliminate the need for removing the child from the child's home; and
(ii) To make it possible for the child to safely return to the child's home.
(b) In determining what reasonable efforts shall be made with respect to a child and in making those reasonable efforts, the child's health and safety shall be the paramount concern.
(c) Reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with the reasonable efforts described in subsection (a) of this section.
(d) If continuation of reasonable efforts described in subsection (a) of this section is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made for placement of the child in a timely manner in accordance with the permanency plan, and to complete the steps necessary to finalize the permanent placement of the child.
(e) Reasonable efforts determinations shall include whether or not services to the family have been accessible, available and appropriate.
(f) The court shall make the reasonable efforts determinations required under this section at every court hearing. The reasonable efforts determinations shall be documented in the court's orders.
(g) Reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child.
The plain language of § 14-3-440 requires DFS to make reasonable efforts to reunify the family. Nevertheless, the statute also recognizes that the children's health and safety is paramount, timely placement of children in accordance with a permanency plan may take precedence over family reunification, and reunification efforts inconsistent with the permanency plan may be discontinued.
[¶ 22] Here, the juvenile court considered DFS's efforts to reunify the children with Mother and found them to be sufficient but ultimately unsuccessful. The court remarked that the case had been on-going for more than a year and expressed frustration with Mother's lack of progress on her case plans. It noted that Mother had failed to follow many of the court's orders, including completing substance abuse treatment. The juvenile court therefore found, consistent with the MDT's recommendation, that further reunification efforts would be futile and family guardianship would be an appropriate permanency plan.
[¶ 23] Mother claims the juvenile court erred by rejecting additional reunification efforts on the basis that she had not completed substance abuse treatment because the treatment requirement was not appropriate. The record does not support Mother's position. The children were originally removed from the home because Mother was arrested for violating the terms of her probation by testing positive for illegal methamphetamine use. That circumstance, alone, indicates that substance abuse treatment was appropriate.
[¶ 24] Throughout the case, reunification was conditioned upon Mother completing substance abuse treatment. Mother agreed with that task in her consent decree and associated case plans. She entered three different programs approved by DFS and/or the juvenile court, but did not complete any of them. The final program was the intensive inpatient WYSTAR program. She was discharged from that program after less than a month. The discharge report indicated *620 that, while the staff was concerned about her psychological issues, she had also been "consistently unwilling to follow directives and ha[d] demonstrated a lack of readiness to change." A psychological evaluation completed shortly before the disposition hearing stated that Mother continued to have substance abuse issues. While her UAs had all been negative, several of them were "dilute," rendering the results unreliable; at other times, she did not show up at scheduled UA appointments.
[¶ 25] Mother relies on an ASI completed shortly before the disposition hearing which concluded that, because she had been abstinent for nine months, she did not need substance abuse treatment. Her position is not persuasive because the results of that ASI were based solely on Mother's self-reporting and were inconsistent with the psychological evaluation. In fact, the psychologist was questioned about that ASI at the disposition hearing:
Q. . . . Would it surprise you if that ASI stated that no further substance abuse treatment was being recommended?
A. I wouldn't be surprised. I really  you know, the ASI and procedure itself I think lends itself to a lot of questions, in my thinking anyway.
Based on her substantial history of alcohol and [illicit] substance use and her psychological conditions, I think she would best be served by outpatient substance abuse services.
[¶ 26] Mother also argues that she actually complied with the substance abuse treatment requirement by completing an out-patient treatment program on her own and without DFS's assistance. While Mother's attorney stated at the hearing to reinstate the neglect petition that he had a letter confirming she had completed a program, we are not directed to any such document in the record. Moreover, even assuming she completed the program, the psychological evaluation stated that Mother needed additional substance abuse treatment. On this record, we cannot fault the juvenile court for refusing to give credence to Mother's position that she complied with the substance abuse treatment component of her case plans.
[¶ 27] Mother also seems to be arguing that she could not complete the treatment requirement because of her underlying psychological issues and she was not given an adequate opportunity to address those issues as her psychological evaluation was not finalized until just before the disposition hearing. Evidence in the record establishes that the requirement of obtaining a psychological evaluation was included in the earliest case plan and reiterated in subsequent plans and the MDT recommendations. Contrary to Mother's assertion that DFS did not adequately assist her in obtaining a psychological evaluation, the first case plan directed her to "Psych. Rehab" for a screening.
[¶ 28] Parents share the burden of ensuring that the child protection system works properly. There is no evidence suggesting that Mother took a proactive role to complete the task of addressing her psychological needs and DFS somehow impeded or failed to assist her efforts. Mother cannot fault DFS for failing to provide services if she was not doing her part to complete the task of obtaining a psychological evaluation.
[¶ 29] Mother additionally claims that the juvenile court unfairly faulted her for a lack of consistent visitation with the children and failing to secure appropriate housing. After reviewing the transcript of the disposition hearing and the resulting order, it does not appear that those issues were dispositive in the juvenile court's decision to move forward with the permanency plan of guardianship. Thus, there is no justification for reversing the juvenile court's ruling on those bases.
[¶ 30] The juvenile court's oral and written rulings demonstrate that it considered the family's entire situation in ordering disposition of the children. The court noted that the children had been placed outside the family home for more than a year, during which time Mother had not made any significant advances toward reunification. The psychological evaluation echoed the sentiment that Mother was not ready to have physical custody of her children:
During this evaluation, [Mother] described her sincere interest in providing daily care to her children. However, at *621 this time [Mother] does not appear to be sufficiently stable to take the additional responsibility for her children. Prior to the placement of her children in her home, [Mother] should demonstrate responsible behaviors in several areas of [her] life including sustained full remission from alcohol and illicit substance use, a stable and safe home, and a sufficient resolution of her mental health problems. With ongoing abstinence from substance abuse, she will likely provide adequate care to her children during visitation.
At this time, [Mother's] oldest son is unwilling to pursue their relationship. [Mother] and her children may gain from family therapy.
If [Mother] is unable to accomplish these goals within the time lines required by law, her team should consider a permanent placement for her children.
[¶ 31] From the beginning of the case, Mother had been advised, consistent with Wyo. Stat. Ann. § 14-3-431(d) (LexisNexis 2007),[3] that a permanency hearing would occur within one year of the children's placement outside the family home. She had also been repeatedly advised that a concurrent permanency plan of family guardianship was being developed and pursued. Given that, at the time of the disposition hearing, none of the professionals involved in the case believed that reunification could be accomplished within a reasonable time, the juvenile court properly concluded that the State had proven by a preponderance of the evidence that continuation of efforts to reunite the children with Mother was inconsistent with the permanency plan of placing the children in a long-term guardianship. See § 14-3-440(d). The juvenile court's order recognized the children's rights and needs for stability and permanency and there was sufficient evidence to support it. See CL v. Wyo. Dep't of Family Servs. (In re A.D.), 2007 WY 23, 151 P.3d 1102 (Wyo.2007).[4]
[¶ 32] Affirmed.
NOTES
[1] The children's father apparently did not have custody of them and is not part of this case, although he was included in some of the family case plans.
[2] Section 14-3-428 states:

(a) At any time after the filing of a petition alleging a child to be neglected and before adjudication, the court may issue a consent decree ordering further proceedings held in abeyance. The placement of the child is subject to the terms, conditions and stipulations agreed to by the parties affected in accordance with W.S. 14-3-429. The consent decree shall not be entered without the consent of the district attorney, the child's guardian ad litem and the parents. Modifications to an existing consent decree may be allowed.
(b) The consent decree shall be in writing and copies given to all parties. The decree shall include the case plan for the family.
(c) A consent decree, if the child remains within the home, shall be in force for the period agreed upon by the parties unless sooner terminated by the court.
(d) If the child is placed outside the home, a consent decree shall be in force for the period agreed upon by the parties but not longer than six (6) months unless sooner terminated by the court. For good cause the court may grant one (1) extension of the consent decree for no longer than six (6) months.
(e) If a consent decree is in effect and the child is in placement, the court shall hold review hearings as provided by W.S. 14-3-431.
(f) If prior to discharge by the court or expiration of the consent decree, the parents or guardian of a child alleged to be neglected fail to fulfill the terms and conditions of the decree or a new petition is filed alleging the child to be neglected, the original petition and proceeding may be reinstated upon order of the court after hearing, and the court may proceed as though the consent decree had never been entered. If, as part of the consent decree, the parents or guardian made an admission to any of the allegations contained in the original petition, that admission shall be entered only if the court orders that the original petition and proceeding be reinstated and the admissions, if any, be entered. If the admission is entered, the court may proceed to disposition pursuant to W.S. 14-3-426.
(g) Parties discharged by the court under a consent decree without reinstatement of the original petition and proceeding shall not thereafter be proceeded against in any court for the same misconduct alleged in the original petition except concurrent criminal allegations or charges against a person accused to have abused or neglected a child shall not be affected by a consent decree.
[3] Section 14-3-431(d) states:

The court shall conduct a permanency hearing no later than twelve (12) months from the date of the child's removal from the home and not less than once every twelve (12) months thereafter if the child remains in out-of-home placement or more frequently as deemed necessary by the court.
[4] It is important to understand that Mother's parental rights were not terminated in this case. Although the juvenile court ordered long term placement outside the home, Mother still retained residual parental rights including, among others, the right to reasonable visitation unless restricted or prohibited by court order. Wyo. Stat. Ann. § 14-3-402(a)(xvi) (LexisNexis 2007). The State and the psychologist recognized, at the disposition hearing, the importance of continuing to encourage and facilitate a relationship between the children and Mother.