# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 119

**OCTOBER TERM, A.D. 2021**

**October 28, 2021**

IN THE INTEREST OF: AM, NM and
IM, minor children,

RR,

Appellant
(Respondent),

v.                                                                          S-21-0037

THE STATE OF WYOMING,

Appellee
(Petitioner).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

    Sarah G.R. Phillips, Bighorn Mountain Legal Services, LLC, Sheridan, Wyoming.
    Argument by Ms. Phillips.

*Representing Appellee:*

    Bridget L. Hill, Attorney General; Misha Westby, Deputy Attorney General;
    Christina McCabe, Senior Assistant Attorney General; Allison Connell, Assistant
    Attorney General. Argument by Ms. Connell.

*Guardians ad Litem:*

    Joseph R. Belcher, Director, and Kimberly A. Skoutary-Johnson, Chief Trial and
    Appellate Counsel, Wyoming Guardian ad Litem Program.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]   The Department of Family Services (DFS) recommended changing the permanency plan for minor siblings IM, NM, and AM from a concurrent plan of adoption or reunification to adoption.  The juvenile court held an evidentiary hearing after which it ordered the permanency plan be changed to adoption and found that DFS should be relieved of making further reasonable efforts to reunify.  We affirm.

## ISSUES

[¶2]   Mother raises three issues which we consolidate and rephrase as follows:

> I.      Did the juvenile court err when it ruled that DFS could cease making reasonable efforts to reunify?
>
> II.     Did the juvenile court's decision to admit DFS's Exhibit A violate Mother's due process rights?

## FACTS

[¶3]    RR (Mother) and JM (Father) are parents of three minor children, IM, NM, and AM.  On March 29, 2019, law enforcement officers responded to a report of an argument between Mother and Father outside a school.  When officers contacted Mother and Father, they learned that the children, then ages seven, five, and four, had been home alone at the time of the argument.  The officers also discovered a pipe and small baggie which both tested presumptively positive for methamphetamine.  Mother admitted to purchasing and using methamphetamine, the officers arrested Mother and Father, and took IM, NM, and AM into protective custody.  Later that day, the Sheridan County Attorney's office filed a petition alleging Mother and Father had neglected the children.  On April 1, 2019, the juvenile court ordered the children be placed in foster care.  It also ordered both parents to address their addictions and to obtain counseling assessments to address individual and family needs.  A multidisciplinary team (MDT) was appointed to "formulate reasonable and attainable recommendations for the court outlining the goals or objectives the parents should be required to meet for the child[ren] to be returned to the home or for the case to be closed."  Wyo. Stat. Ann. § 14-3-427(f) (LexisNexis 2021).

[¶4]   Mother initially made progress on the plan—she got a job, had several clean UAs, successfully completed inpatient treatment, attended outpatient counseling and recovery classes, and progressed to unsupervised visits with the children.  In the early spring of 2020, Mother's counseling and recovery meetings were cancelled and she lost her job as a server at a restaurant because of COVID-19.  During a visit with the children, Mother was arrested on suspicion of theft.  Mother lost her housing because of the arrest but resumed part-time employment as a server and appeared to be doing well with her

1

aftercare. Mother resumed supervised visits with the children in the summer of 2020. In August 2020, Mother was arrested on new felony charges for delivery of methamphetamine. Mother relapsed and, in September, she was arrested again for misdemeanor possession of a controlled substance. DFS then learned Mother had been lying about her living situation for months. At the next MDT meeting, the majority of the team recommended the permanency plan be changed to adoption.

[¶5] At the November 5, 2020 evidentiary hearing, the DFS caseworker and the guardian ad litem argued it was in the children's best interest to change the permanency plan to adoption. The State introduced an exhibit prepared by the DFS caseworker which summarized the events of the previous nineteen months and the reasonable efforts made by DFS to reunify the family. Mother objected to the exhibit, asserting it was untimely because she only received a copy "shortly before" the hearing, and because it contained hearsay within hearsay. The juvenile court admitted the exhibit reasoning that the Rules of Evidence do not apply to juvenile proceedings of this nature and that probative, trustworthy, and credible hearsay evidence is allowed. *See* W.R.E. 1101(b)(3).

[¶6] The DFS caseworker opined that it was in the children's best interest to change the permanency plan to adoption. Mother's counsel asked if it would be detrimental to cease reasonable efforts pending the termination case. The DFS caseworker responded that she did not think it would be detrimental to the children and that prolonging reasonable efforts would "make things worse in the end."

[¶7] The juvenile court promptly issued its order on November 10, 2020. It found:

> Throughout this case, both parents have made little to no progress. . . . Although Mother has actively participated in this case, she is still not in a position to parent these children after receiving extensive services. Both parents have failed to maintain their sobriety, stable housing, or employment. In addition, both parents have continued to engage in criminal behavior throughout this case, and they are now facing significant jail or prison time.

Though Mother requested continued reunification efforts, the court concluded that the children's right to stability and permanency outweighed Mother's right to familial association. It held that the State had proven the permanency plan was not in the children's best interest and ordered the permanency plan be changed to adoption. It ruled, "DFS should be relieved of making further reasonable efforts, including facilitating phone calls between the children and their parents." Mother appealed.

## DISCUSSION

### I. The Juvenile Court Did Not Err When It Ruled That DFS Could Cease Reasonable Efforts

[¶8]   Mother does not challenge the juvenile court's order changing the permanency plan to adoption; she does object to allowing DFS to cease making reasonable efforts at reunification, which essentially means she can no longer have contact with her children. First, she asserts the juvenile court's decision is not supported by sufficient evidence; second, Mother argues that the juvenile court's decision was deficient as a matter of law because it did not make specific findings under Wyo. Stat. Ann. § 14-2-309(b) or (c).

### A.   Standard of Review

[¶9]   We review the juvenile court's decision to change a permanency plan for an abuse of discretion. *In the Interest of AA*, 2021 WY 18, ¶ 33, 479 P.3d 1252, 1261 (Wyo. 2021). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." *Id.* (quoting *MMM v. AMMJ*, 2018 WY 60, ¶ 10, 419 P.3d 490, 493 (Wyo. 2018)). To the extent Mother challenges the sufficiency of the evidence to support the juvenile court's decision, "we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party." *In the Matter of JPL*, 2021 WY 94, ¶ 21, 493 P.3d 174, 180 (Wyo. 2021) (citations omitted). Mother's assertion that the juvenile court erred as a matter of law requires us to "engage in statutory interpretation, a question of law that we review de novo." *In the Interest of DT*, 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017) (citation omitted).

### B.   The Juvenile Court Was Not Required to Order Reasonable Efforts to Continue When It Changed the Permanency Plan to Adoption

[¶10] Mother argues that the juvenile court's decision that DFS could cease making reasonable efforts to reunify her with her children was contrary to the children's best interest and not supported by sufficient evidence. But, while the decision to change a permanency plan must be supported by sufficient evidence, the same is not true for the decision to discontinue reasonable efforts following a change in plan.

[¶11] "To change a permanency plan, the juvenile court must determine whether the current plan is in the child's best interests and whether DFS has made reasonable efforts to finalize the plan." *In the Interest of SW*, 2021 WY 81, ¶ 17, 491 P.3d 264, 269 (Wyo. 2021) (citations omitted). The State must prove that a change in the permanency plan is justified by a preponderance of the evidence. *Id.* If the juvenile court determines the State has met its burden, it may order a change in the permanency plan. *Id.* While Wyo. Stat. Ann. § 14-3-440 requires DFS to make reasonable efforts to reunify children with

their family, "the statute also recognizes that . . . reunification efforts inconsistent with the permanency plan may be discontinued." *In re NDP*, 2009 WY 73, ¶ 21, 208 P.3d 614, 619 (Wyo. 2009); *see also* Wyo. Stat. Ann. § 14-3-440(d) (If reasonable efforts to reunify are "determined to be inconsistent with the permanency plan for the child," efforts shall be made in accordance with the revised permanency plan "to finalize the permanent placement of the child.").

[¶12]  The juvenile court determined that reunification was no longer in the best interest of the children and that DFS had made reasonable efforts to reunify the family, but those efforts had failed.  It ordered that the permanency plan be changed to adoption. Reasonable efforts to reunify Mother with the children are unnecessary because the permanency plan no longer contemplates reunification of the family.  *See In the Interest of SW*, 2021 WY 81, ¶ 29, 491 P.3d at 272 (concluding that sufficient evidence supported the decision to change the permanency plan from reunification to adoption, that reasonable efforts had been made, and that no further efforts were required); *In the Interest of DT*, 2017 WY 36, ¶ 34, 391 P.3d at 1146 (concluding the juvenile court did not abuse its discretion when it ruled DFS could cease reasonable efforts and changed the permanency plan from reunification to adoption); *In re NDP*, 2009 WY 73, ¶ 21, 208 P.3d at 619.  Mother directs this Court to no authority that requires a juvenile court to support its decision to cease reasonable efforts after a change in permanency plan by sufficient evidence.  The juvenile court did not abuse its discretion.[1]

**C.    Wyoming Statute § 14-3-440 Does Not Require a Specific Finding Under § 14-2-309(b) or (c) When the Juvenile Court Finds DFS Made Reasonable Efforts to Reunify the Family but the Efforts Were Unsuccessful**

[¶13]  Mother argues that the juvenile court's decision to cease reasonable efforts was deficient as a matter of law because it did not make additional findings under Wyo. Stat. Ann. § 14-2-309(b) or (c).  "When interpreting a statute and its application, we first look at the plain language used by the legislature.  If the statute is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning." *In the Interest of DT*, 2017 WY 36, ¶ 25, 391 P.3d at 1144 (quoting *In re CRA*, 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016)).  We construe each statutory provision *in pari materia*, and we "consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously." *In Interest of JB*, 2017 WY 26, ¶ 12, 390 P.3d 357, 360 (Wyo. 2017) (citations omitted).

---

[1] DFS argued at oral argument that one reason for the cessation of reasonable reunification efforts was the desire to achieve permanency for the children.  While this is certainly a desirable goal, it does not seem to have been achieved in this case.  According to counsel, it took almost a year for the State to file its petition for termination.

[¶14] Wyoming statute § 14-2-309 addresses the grounds for terminating the parent-child relationship. Subsection (a) sets forth bases for termination that generally require DFS to make reasonable efforts at reunification prior to seeking termination. Subsections (b) and (c) address circumstances in which the parents' conduct is so egregious that the statute specifically states no reasonable efforts are required before DFS seeks termination.[2]

[¶15] Mother's argument that provision means reasonable efforts at reunification can only be ceased after specific findings by the juvenile court that the circumstances under § 309(b) or (c) exist would turn the statutory structure on its head. The general rule is that reasonable efforts shall be made to preserve and reunify the family to either eliminate the need to remove the child from the home, or to make it possible for the child

---

[2] Subsections (b) and (c) provide:

> (b) Proof by clear and convincing evidence that the parent has been convicted of any of the following crimes may constitute grounds that the parent is unfit to have custody or control of any child and may be grounds for terminating the parent-child relationship as to any child with no requirement that reasonable efforts be made to reunify the family:
>> (i) Murder or voluntary manslaughter of another child of the parent or aiding and abetting, attempting, conspiring to commit or soliciting such a crime; or
>> (ii) Commission of a felony assault which results in serious bodily injury to a child of the parent. As used in this paragraph "serious bodily injury" means as defined by W.S. 6-1-104.
>
> (c) Notwithstanding any other provision of this section, evidence that reasonable efforts have been made to preserve and reunify the family is not required in any case in which the court determines any one (1) or more of the following by clear and convincing evidence:
>> (i) The parental rights of the parent to any other child have been terminated involuntarily;
>> (ii) The parent abandoned, chronically abused, tortured or sexually abused the child;
>> (iii) The parent has been convicted of committing one (1) or more of the following crimes against the child or another child of that parent:
>>> (A) Sexual assault under W.S. 6-2-302 through 6-2-304;
>>> (B) Sexual battery under W.S. 6-2-313;
>>> (C) Sexual abuse of a minor under W.S. 6-2-314 through 6-2-317.
>> (iv) The parent is required to register as a sex offender pursuant to W.S. 7-19-302 if the offense involved the child or another child of that parent. This shall not apply if the parent is only required to register for conviction under W.S. 6-2-201;
>> (v) Other aggravating circumstances exist indicating that there is little likelihood that services to the family will result in successful reunification.

Wyo. Stat. Ann. § 14-2-309(b) and (c) (LexisNexis 2021).

to safely return to the child's home. Wyo. Stat. Ann. § 14-3-440(a).[3]  If DFS considers the reasonable efforts have not achieved those goals, it may seek to change the permanency plan from reunification to adoption, as it did here, and it must then "demonstrate to the juvenile court that it made reasonable efforts to reunify the family but was unsuccessful." *Interest of VS*, 2018 WY 119, ¶ 38, 429 P.3d 14, 25 (Wyo. 2018). The § 309(b) and (c) procedure for such exceptional circumstances as murder of another child or sexual abuse simply have no application to Mother's situation.

[¶16]  Here, the juvenile court found that DFS made reasonable efforts to reunify the family, but those efforts were unsuccessful.  It determined that DFS could cease making reasonable efforts to reunify the family because those efforts would be inconsistent with the new permanency plan—adoption.  The juvenile court did not err as a matter of law by making no finding under Wyo. Stat. Ann. § 14-2-309(b) or (c).

## II.    *The Juvenile Court Did Not Violate Mother's Due Process Rights When It Admitted State's Exhibit A into Evidence*

[¶17]  Mother claims the admission of Exhibit A violated her due process rights.  "The question of whether an individual was afforded due process is one of law, for which our review is *de novo*." *Interest of VS*, 2018 WY 119, ¶ 25, 429 P.3d at 21 (citation omitted). "A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.  The appellant bears the burden of showing an abuse of discretion." *Bruce v. Bruce*, 2021 WY 38, ¶ 16, 482 P.3d 328, 333 (Wyo. 2021) (citations omitted).  Exhibit A is a six-page summary of the case that the DFS caseworker put together to justify the decision to change the permanency plan.  The caseworker testified that she compiled the summary from her internal DFS notes.  The State gave a copy of the exhibit to Mother shortly before the start of the hearing.  Mother objected because it was untimely and contained hearsay within hearsay.  On appeal, Mother argues she was denied due process because she could not meaningfully defend against the exhibit.[4]

[¶18]  Generally, due process requires notice and an opportunity to be heard. *Matter of TJH*, 2021 WY 56, ¶ 10, 485 P.3d 408, 412 (Wyo. 2021).  "The required process varies depending upon 'the nature of the proceeding and the interests involved.'" *Interest of VS*,

---

[3] *See KC v. State*, 2015 WY 73, ¶¶ 20-31, 351 P.3d 236, 242-45 (Wyo. 2015), for an excellent summary of the procedure in abuse and neglect and termination cases.

[4] Mother does not specify how Exhibit A is relevant to the issue she has raised – the cessation of reasonable efforts to reunify – as opposed to the change in the permanency plan, which she does not contest.  However, the notes regarding her continued drug use, and the children's "thriving" in foster care could be relevant to the decision to cease Mother's contact with the children.

2018 WY 119, ¶ 28, 429 P.3d at 22 (citation omitted).  Parents are entitled to an evidentiary hearing when a proposed "change in permanency plan includes adoption or permanent placement other than reunification."  *KC v. State*, 2015 WY 73, ¶ 42, 351 P.3d 236, 247 (Wyo. 2015).  When a parent requests an evidentiary hearing,

> [t]he parent requesting a hearing is entitled to put the State to its proof, to be present, to confront and cross-examine witnesses, to call witnesses, and to present a case in support of a continued plan of reunification or dismissal of the case. Hearsay evidence that is probative, trustworthy and credible may be received at the hearing. . . . [A]t the permanency hearing[,] the State has the burden of establishing by a preponderance of the evidence that a change in the permanency plan is in the best interests of the child.

*Interest of VS*, 2018 WY 119, ¶ 29, 429 P.3d at 22-23 (quoting *KC*, 2015 WY 73, ¶ 44, 351 P.3d at 247).

[¶19]  We agree with Mother that the State's production of the exhibit was untimely. There was insufficient time for Mother to review the exhibit.  However, we cannot say that the untimeliness of the exhibit denied Mother due process.  Mother cross-examined the caseworker about her opinions and testimony, and she had the opportunity to call witnesses and present a case in support of a continued plan of reunification.  Further, while the caseworker created the exhibit from her internal DFS notes, most of the information within the exhibit is also found in the MDT and CASA notes to which Mother had access.  Mother challenges the exhibit for containing hearsay, but the rules of evidence do not apply in juvenile proceedings except in adjudicatory hearings.  W.R.E. 1101(b)(3).  Thus, reliable hearsay is allowed at permanency hearings.  *Interest of VS*, 2018 WY 119, ¶ 29, 429 P.3d at 22-23 (quoting *KC*, 2015 WY 73, ¶ 44, 351 P.3d at 247). The caseworker testified that she compiled the document based on her review of the case and all the statements either came from her or other MDT members, thus, the hearsay testimony was "probative, trustworthy and credible."  *Interest of VS*, 2018 WY 119, ¶ 29, 429 P.3d at 22.  The juvenile court did not violate mother's due process rights by admitting Exhibit A into evidence.

## *CONCLUSION*

[¶20]  The juvenile court did not err when it ruled that DFS could cease reasonable efforts following a change in the permanency plan to adoption, and the admission of Exhibit A did not violate Mother's right to due process.  We affirm.