# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 105

**APRIL TERM, A.D. 2025**

**September 26, 2025**

IN THE INTEREST OF: LC, minor child,

TC,

Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-25-0064

*Appeal from the District Court of Goshen County*
*The Honorable Edward A. Buchanan, Judge*

*Representing Appellant:*
Ruth Ogden, Woodhouse Roden Ames & Brennan LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Ryan Schelhaas, Interim Attorney General; Christina F. McCabe, Deputy Attorney General; Wendy S. Ross, Senior Assistant Attorney General; Shawnna M. Lamb, Senior Assistant Attorney General.

*Guardian ad Litem:*
Herbert K. Doby, Torrington, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, JJ., and OWENS, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**OWENS**, **District Judge**.

[¶1]    TC (Father) appeals the juvenile court's order changing the permanency plan from family reunification to adoption.[1] Father argues the juvenile court abused its discretion when changing the permanency plan and should have adopted a concurrent permanency plan instead. We affirm the juvenile court's order.

## *ISSUES*

[¶2]    Father presents two issues:

1.  Did the juvenile court abuse its discretion when it changed the permanency plan and ceased family reunification efforts?

2.  Did the juvenile court commit plain error when it did not adopt a concurrent permanency plan?

## *FACTS*

[¶3] On October 27, 2023, law enforcement responded to a local school after receiving a report that Father struck his nine-year-old daughter, LC, in the head. The officers and social workers met with LC who informed them her father struck her on the head and caused her to fall over and hit the floor. LC also reported verbal abuse from Father and that she was scared to go home. Additionally, LC expressed concerns that her report will cause her to be subject to retaliation by Father. After this meeting, law enforcement and the Wyoming Department of Family Services (Department) removed LC from the home. A shelter care report also stated LC expressed concerns about inappropriate sexual behavior from Father. Father is a registered sex offender and LC has a long history of being sexually exploited or abused by other family members.

[¶4] On October 30, 2023, the State filed a petition against Father, alleging Father physically and verbally abused LC. The juvenile court promptly held an initial hearing and shelter care hearing. The juvenile court placed LC in the legal and physical custody of the Department and ordered supervised visits between LC and her parents. In early January 2024, Father admitted the physical and verbal abuse allegations in the petition and provided a factual basis for his admission. The juvenile court adjudicated LC as a neglected child.

[¶5] In the Predisposition Report filed on January 25, 2024, the case worker provided the juvenile court with additional family history information before the scheduled disposition hearing. This history included Father's contacts with law enforcement, which involved a

---

1 Mother did not challenge the juvenile court's order due to her intent to relinquish her parental rights to the minor child.

3

sex assault that was under investigation, a prior sex assault, and several child and domestic abuse allegations. Father also had history with the Department, including two neglect allegations and three others concerning sexual abuse.

[¶6] On January 9, 2024, the juvenile court ordered Father to cooperate with the Department to develop a case plan and comply with his case plan requirements. The developed case plan identified physical and sexual abuse concerns along with a concern LC was going to school hungry, dirty, and with unexplained bruises. The case plan established several goals for Father to address these concerns. Father signed the case plan on January 14, 2024. The case plan required Father to:

- Have a safe and stable home;
- Attend visitation when deemed appropriate;
- Complete a psycho-sexual evaluation with parental capacity and follow its recommendations;
- Attend individual counseling
- Attend family therapy when recommended
- Comply with home visits;
- Complete a parenting course; complete a substance abuse evaluation; and
- Comply with substance use testing.

[¶7] At the time Father signed the plan, the case worker had already sent a referral for the psychosexual evaluation and was seeking counseling referrals. Completion of the psychosexual evaluation was imperative to the case plan. The Department informed Father the only way he can move forward with visitation with LC was to complete the evaluation and attend counseling. The Department scheduled the evaluation for Father on April 16, 2024. The Department and the evaluator sent reminders to Father. Yet, when the time came, Father arrived so late to the evaluation that it could not be completed. Father told the Department that "he had other things that were a priority" over the evaluation. The Department contacted four other agencies to schedule a new evaluation but was unsuccessful. The original evaluator agreed to reschedule the evaluation if the Department paid the "no show" fee of $1,500. The Department paid the fee. The Department scheduled a new evaluation in October 2024 which Father attended and completed.

[¶8] The case plan also required Father to attend individual counseling. However, Father never engaged with a therapist to complete his individual therapy requirement. When Father met roadblocks with local therapists being unable to assist him, the Department provided Father with five referrals to out of state therapists who could work with him

4

remotely. Of those referrals, four reached out to Father but Father never responded to the inquiries.

[¶9] The juvenile court held a disposition hearing on January 29, 2024, and continued to order reunification as the permanency plan. On October 23, 2024, the Multidisciplinary Team (MDT) agreed to change the permanency plan from reunification to adoption based on Father's psychosexual evaluation, which indicated Father "has sexually and physically abused a child in the past and he is at high risk of re-offending in the future." The Department also learned LC had disclosed during her therapy sessions that both of her parents, stepparents, and even other family members have either sexually abused LC or had knowledge of the sexual abuse. The Department stated in the Meeting Report that Father had not put forth any effort on the case plan but had completed a parenting class. Further, the Department stated in the permanency report that Father had been unable to provide a safe, clean home environment and was unable to have appropriate conversations when speaking about LC. Father and his counsel objected to the change in permanency.

[¶10] The juvenile court held an evidentiary permanency hearing on November 21, 2024. The State presented three witnesses: LC's therapist, the licensed clinical psychologist who evaluated Father, and the Department case worker. The GAL and Father did not call any witnesses or present additional evidence. In December, the juvenile court entered a written order changing the permanency plan to adoption and ceasing reunification efforts. The juvenile court found the Department made reasonable efforts to achieve reunification and provided services that were accessible, available, and appropriate, yet those efforts were unsuccessful. The juvenile court also found changing the permanency plan was in LC's best interests. Father timely appealed.

## STANDARD OF REVIEW

[¶11] We analyze a juvenile court's change in permanency plan, as well as its application and interpretation of the Child Protection Act under the following standard:

> We review a juvenile court's order changing a permanency plan for an abuse of discretion. *In re SK*, 2024 WY 25, ¶¶ 21-22, 544 P.3d 606, 613 (Wyo. 2024). "To change a permanency plan 'from family reunification to adoption, a juvenile court must find that the Department made reasonable efforts to achieve reunification without success and that reunification is no longer in the children's best interest.'" *In re MA*, 2022 WY 29, ¶ 25, 505 P.3d 179, 185 (Wyo. 2022) (quoting *In re RR*, 2021 WY 85, ¶ 97, 492 P.3d 246, 270 (Wyo. 2021)). "A court abuses its discretion if 'it acts in a manner which exceeds the bounds of reason under the circumstances.'" *In re SK*, ¶ 22, 544 P.3d at 613 (quoting *In re SRS*, 2023 WY 50, ¶ 21, 529 P.3d

5

1074, 1080 (Wyo. 2023)). "To the extent Mother challenges the sufficiency of the evidence [supporting] the juvenile court's decision, 'we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.'" *In re AM*, 2021 WY 119, ¶ 9, 497 P.3d 914, 918 (Wyo. 2021) (quoting *In re JPL*, 2021 WY 94, ¶ 21, 493 P.3d 174, 180 (Wyo. 2021)). We measure the juvenile court's decision to change the permanency plan "against the preponderance of the evidence standard." *In re SK*, ¶ 23, 544 P.3d at 613-14 (quoting *In re DT*, 2017 WY 36, ¶ 30, 391 P.3d 1136, 1145 (Wyo. 2017)); *In re AM*, 2021 WY 119, ¶ 11, 497 P.3d at 918 ("The State must prove that a change in the permanency plan is justified by a preponderance of the evidence. If the juvenile court determines the State has met its burden, it may order a change in the permanency plan."). "We review the proper application and interpretation of the Child Protection Act de novo." *In re PT*, 2025 WY 11, ¶ 12, 562 P.3d 848, 851 (Wyo. 2025) (citing *In re JN*, 2023 WY 83, ¶ 9, 534 P.3d 455, 457-58 (Wyo. 2023)).

*Int. of LH*, 2025 WY 28, ¶ 15, 565 P.3d 683, 687 (Wyo. 2025).

## *DISCUSSION*

### I. *The juvenile court did not abuse its discretion by changing the permanency plan from reunification to adoption based on Father's lack of progress with his case plan.*

[¶12] Whether the Department made reasonable efforts is "determined on a case-by-case basis." *Int. of SW*, 2024 WY 81, ¶ 20, 491 P.3d 264, 270 (Wyo. 2021) (quoting *In re DRS*, 2011 WY 128, ¶ 33, 261 P.3d 697, 706 (Wyo. 2011)). "To be considered reasonable, [the Department's] efforts must 'have been accessible, available and appropriate.'" *MA*, 2022 WY 29, ¶ 29, 505 P.3d at 186 (quoting *SW*, 2021 WY 81, ¶ 20, 491 P.3d 264, 270 (Wyo. 2021)). The Department's efforts must be tailored to "the unique situation of the family involved." *MA*, 2022 WY 29, ¶ 30, 505 P.3d at 186 (quoting *SW*, 2021 WY 81, ¶ 20, 491 P.3d at 270). To demonstrate reasonable efforts, the Department "must make clear the reasons that necessitated the out of home placement in the first place, and then show how its efforts were directed at remedying those reasons." *MA*, 2022 WY 29, ¶ 30, 505 P.3d at 186. The Department's reasonable efforts must be aimed at preventing or eliminating the need for removing the children from their home, or making it possible for the children to safely return home. Wyo. Stat. Ann. § 14-3-440(a); *MA*, 2022 WY 29, ¶ 29, 505 P.3d at 186 (citing *AM*, 2021 WY 119, ¶ 15, 497 P.3d at 920). The health and safety of the children

are paramount in determining what efforts are required. Wyo. Stat. Ann. § 14-3-440(b); *SW*, ¶ 19, 491 P.3d at 270.

[¶13] Father argues the juvenile court abused its discretion when it changed the permanency plan to adoption because the specialized counseling services he was required to undertake for reunification were unavailable, inaccessible, and the Department failed to pursue meaningful alternatives. The juvenile court found that after considering all the evidence presented during the permanency hearing, it was abundantly clear the Department had made reasonable efforts reunify the family. It also found the Department's services were accessible, available, and appropriate. Yet, despite the efforts of the Department, the juvenile court found those efforts have been unsuccessful due to the Father's unwillingness to make progress, failure to engage with therapists, minimalization of the risks associated with reunification, and refusal to take any personal responsibility for the reasons necessitating LC's out of home placement.

[¶14] The record shows the juvenile court had ample evidence of ongoing likelihood of abuse, Father's unwillingness and inability to make progress toward reunification, and inability to be rehabilitated. Based on the MDT report, the MDT expressed it had ongoing safety concerns related to Father's inability to complete his psychosexual evaluation after being late to the appointment. The MDT rescheduled the appointment for October 8, 2024. It reminded Father of the appointment on several occasions. Father also knew that visitation would depend on his completion of the evaluation as part of his case plan. Further, Father was unable to engage in therapy as no local therapist was willing to work with him based on his desires and needs, and the VOA was unwilling to engage in therapy until the psychosexual evaluation was complete.

[¶15] At the evidentiary hearing, the Department's case worker testified to the efforts made in order to give Father opportunities to engage in therapy. Several therapists in the community indicated a lack of qualifications to work with Father so the Department reached out to at least five (5) places in Colorado, Idaho and Montana that do tele-health appointments to help Father find someone who is qualified. However, Father failed to respond to the four referrals who reached out to him to provide an intake appointment. The Department set up the first psychosexual evaluation which he did not show up for. Father stated he had other priorities. The Department contacted four different agencies to try to do a psychosexual evaluation and were unsuccessful in scheduling another one until the Department paid the no-show fee for the first appointment. The Department offered to send the documentation that was required for his second psychosexual evaluation to the evaluator but Father failed to cooperate. Despite the Department's extensive efforts to make therapy accessible and available to Father, he failed to take advantage of the opportunities the Department provided.

[¶16] The Department also testified that they provided the family with foster care placement, therapy sessions, assistance with utilities, gas cards, clothing, a psychosexual

evaluation, ASI/ASAM's for both parents, referrals to counselors, and other efforts toward family reunification. Father had not requested much in the way of assistance, except for help with the psychosexual evaluation and required treatment. However, Father had not attended any therapy sessions, despite the Department's efforts to pair him with therapists in the community. The Department always had conflict with Father when it was trying to work with him.

[¶17] The evaluator who eventually performed the psychosexual evaluation testified that Father presented what she believed to be false information to various therapists so they would not work with him. Father did not believe he needed therapy. The evaluator concluded Father was ranked the fourth highest in sexual offender risk protocols. The evaluator was very concerned by this outcome because Father had supposedly gone through ten plus years of sexual offender treatment prior to the evaluation, had another allegation of sexual misconduct but could not demonstrate any of those interventions that could have lowered his risk. Father had a conviction in 2002 for sexual assault in the third degree and was required to register as a sex offender in the State of Wyoming. The evaluator testified that based on Father's current functioning and current risk level, she did not see that the minor child could be returned to Father in the next three to six months.

[¶18] The MDT again met after Father completed the psychosexual evaluation. The evaluation indicated Father had sexually and physically abused a minor child in the past and Father is at high risk of re-offending in the future. The MDT report also indicated it had been disclosed that both parents, stepparents, and other family members have sexually abused LC or had knowledge of the same. Due to these findings, the MDT changed its permanency plan recommendation from reunification to adoption. In conjunction with this information, the MDT Report noted that the case had been open for one year and the case plan had not worked. Therapy had not been performed because Father had not been attending or able to attend therapy because his needs are beyond what the local therapists are able to do. He had not put forth any effort to begin with and had not followed up with any of the out-of-state referrals the Department made for Father's therapy. Based on the psychosexual evaluation, the Department was unable to place LC back in his care without the progression of intense therapy.

[¶19] The record therefore demonstrates that Father failed to make sufficient progress on his case plan goals, specifically counseling. In addition, at the evidentiary hearing, LC's therapist presented testimony that LC was very fearful of Father. The therapist testified that LC feared Father is watching her, will kidnap her and will gravely harm her. The Department's case worker testified the parents only had one visit with their child at the beginning of the case. She further testified LC went into a complete meltdown after the visit. Since that time LC had no contact with her Mother or Father so the therapist recommended the visits cease due to LC trying to cope with trauma. Also, the therapist

testified that if LC knew there is a plan in place to live with another family and that she is not going back to live with her Mother or Father, it would be very helpful to her.

[¶20] A juvenile court does not abuse its discretion when a parent has not made sufficient progress toward a case plan in a reasonable amount of time. *LH*, 2025 WY 28, ¶ 28, 565 P.3d at 690 (citation omitted). "Children have a right to stability and permanency in their family relationships." *In re SRS*, 2023 WY 50, ¶ 30, 529 P.3d 1074, 1082 (Wyo. 2023). The Child Protection Act recognizes a child having a superior right to stability and permanency by placing a time limit on the length of time a child stays in foster care. *Id.*; Wyo. Stat. Ann. § 14-3-431(m). Viewing the evidence in the light most favorable to the State, although Father made some progress by obtaining the psychosexual evaluation shortly before the permanency hearing, the record contains sufficient evidence to change the permanency plan from reunification to adoption. For instance, based on the results of the psychosexual evaluation, it was clear Father would not be rehabilitated any time soon. The juvenile court reasonably concluded that reunification was not in LC's best interest, that the Department made reasonable efforts to reunify the family, and that those efforts were unsuccessful. *LH*, 2025 WY 28, ¶ 15, 565 P.3d at 687 (citation omitted). Therefore, the juvenile court did not abuse its discretion when changing the permanency plan from reunification to adoption. *Id.*

## II.     *The juvenile court did not commit plain error when it declined to adopt a concurrent plan of reunification and adoption.*

[¶21] Father asserts for the first time on appeal that the juvenile court erred by failing to order a concurrent permanency plan. The State argues this Court does not need to review that argument because Father did not present a plain error analysis. In addition, the State argues if this Court were to consider Father's argument, he failed to show plain error because the juvenile court did not violate a clear rule of law.

[¶22] Generally, before a party can raise an issue on appeal, the party must raise it in the trial court. *KC v. State*, 2015 WY 73, ¶ 47, 351 P.3d 236, 248 (Wyo. 2015). However, we recognize two exceptions to this rule when the issue involves a question of jurisdiction or implicates fundamental rights. *In re AGS*, 2014 WY 143, ¶ 33, 337 P.3d 470, 480 (Wyo. 2014). We have previously found that proceedings terminating parental rights affect "fundamental liberty of familial association." *Id.* Likewise, we have found that a decision halting reunification efforts affects a parent's substantive rights due to its inevitable impact in a termination proceeding that will eventually be filed. *Int. of ECH,* 2018 WY 83, ¶ 21, 423 P.3d 295, 302 (Wyo. 2018) (citation omitted).

[¶23] Because this issue implicates a fundamental liberty interest we will address the issue Father raises for the first time on appeal. Our review is governed by the plain error standard. "Plain error occurs when '1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the

error was denied a substantial right resulting in material prejudice.'" *Int of BG*, 2023 WY 40, ¶ 29, 528 P.3d 402, 412 (Wyo. 2023) (quoting *Int. of DT*, 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017)); *see also Int. of JG*, 742 P.2d 770, 775 (Wyo. 1987) (there must be "a 'clear and unequivocal rule of law[] which [the] particular facts . . . transgress[] in a clear and obvious, not merely arguable way'"). "[T]he appellant bears the burden of proving plain error." *BG*, 2023 WY 40, ¶ 29, 528 P.3d at 412. "Failure to establish each element precludes a finding of plain error." *Lott v. State*, 2022 WY 143, ¶ 10, 519 P.3d 646, 649 (Wyo. 2022) (quoting *Klingbeil v. State*, 2021 WY 89, ¶ 40, 492 P.3d 279, 288 (Wyo. 2021)).

[¶24] The first element of the plain error is satisfied in this case. The incident alleged on the record is clear. The challenged incident is that the juvenile court changed the primary permanency plan to adoption and did not adopt a concurrent permanency plan. Regarding the second element of plain error, Wyo. Stat. Ann.§ 14-3-440(c) states in pertinent part that "[r]easonable efforts to place a child for adoption or with a legal guardian **may** be made concurrently with the reasonable efforts [to preserve and reunify the family]." (emphasis added). There is no requirement under Wyoming law that a concurrent plan must be adopted. The child protection statues only require that the juvenile court adopt a primary permanency plan. *Id*. at § 14-3-440(k). The juvenile court may, in its discretion, adopt a concurrent plan. *Id.* Based on the circumstances of this case, the juvenile court's decision to decline adopting a concurrent plan of reunification and adoption did not violate Wyo. Stat. Ann. § 14-3-440. Therefore, the second element of plain error is not met.

[¶25] Father also does not provide any analysis regarding material prejudice therefore no such analysis is required of this Court. Therefore, Father failed to demonstrate plain error.

## *CONCLUSION*

[¶26] We conclude the juvenile court did not abuse its discretion when it changed the permanency plan from reunification to adoption and allowed the Department to cease reunification efforts. In addition, the juvenile court did not commit plain error when it did not adopt a concurrent permanency plan of reunification and adoption.

[¶27] Affirmed.