# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 83

**APRIL TERM, A.D. 2023**

**August 23, 2023**

IN THE INTEREST OF: JN, minor child,

RN, Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-23-0033

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    *Brittany Thorpe, Domonkos & Thorpe, LLC, Cheyenne, Wyoming.*

*Representing Appellee:*
    *Sylvia Lee Hackl, District Attorney; Jeffrey O'Holleran, Assistant District Attorney.*

*Office of the Guardian ad Litem:*
    *Joseph R. Belcher, Director; Kimberly A. Skoutary-Johnson, Chief Trial and Appellate Counsel.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    JN was taken into protective custody on April 9, 2021, and thereafter DFS implemented a case plan for Mother with the goal of family reunification. After eighteen months during which Mother made little to no progress on the plan, the district court changed the permanency plan to adoption. The order included no findings regarding DFS' reasonable efforts to reunite Mother and JN. Mother appeals and we reverse and remand.

*ISSUES*

[¶2]    Mother presents three issues that we consolidate into two:

> 1. Did the juvenile court abuse its discretion by changing the permanency plan from family reunification to adoption without making the required finding that DFS made reasonable efforts toward reunification?
>
> 2. Did the juvenile court abuse its discretion when it changed the permanency plan from family reunification to adoption?

*FACTS*

[¶3]    The Cheyenne Police Department was dispatched to a hotel on April 9, 2021, regarding a trespassing complaint. Upon arriving at the scene, the officer encountered Mother and JN; Mother was extremely intoxicated. Mother was supposed to leave the hotel earlier that morning but refused. When the officer asked where she lived, she could not tell him. The officer took JN into protective custody.

[¶4]    The juvenile court held a shelter care hearing and found it was contrary to JN's welfare to remain with Mother and ordered legal custody to DFS. A petition alleging neglect was filed and held in abeyance for six months when the parties entered into a consent decree in August of 2021. The consent decree required Mother to obey all laws and follow the terms of her case plan with DFS. Her case plan focused on achieving and maintaining her sobriety and stabilizing her mental and emotional health, and the permanency plan goal was family reunification. Mother was required to participate in random drug and alcohol testing, attend substance abuse support groups, and share with DFS her progress and compliance with treatment recommendations. The consent decree was extended an additional six months in January 2022; however, the State moved to revoke the consent decree in March 2022 due to Mother's significant number of missed and failed drug and alcohol tests.[1]

---

[1] The record does not show if the juvenile court ruled on this motion.

1

[¶5]    The juvenile court held a twelve-month review hearing in April 2022 and determined the permanency plan should remain family reunification. In September 2022, the Multidisciplinary Team (MDT) filed a report with a nonunanimous recommendation to change the permanency plan to adoption. The DFS caseworker and JN's therapist both recommended the permanency plan remain family reunification. JN's court appointed special advocate (CASA), Guardian ad Litem (GAL), and foster mother recommended the permanency plan change to adoption.

[¶6]    In November 2022, the juvenile court held an evidentiary permanency hearing. The court heard testimony from JN's foster mother, JN's CASA, and the DFS caseworker. The DFS caseworker testified that DFS provided services to Mother such as supervised visits, drug testing, housing assistance, food stamps, addiction medication, and support groups to help her achieve her case plan goals, particularly as it related to her sobriety. Mother used medication to treat her alcoholism and alcohol cravings but did not enroll in an in-patient treatment facility until the day before the evidentiary hearing. Up to that point, Mother had made little to no progress on maintaining her sobriety; however, the caseworker was encouraged by Mother's enrollment in the treatment facility and maintained her recommendation to keep family reunification as the permanency plan goal.

[¶7]    JN's foster mother testified that JN'S relationship with Mother had changed and adoption would be in JN's best interest. JN's CASA also recommended the permanency plan change to adoption.

[¶8]    The juvenile court made an oral ruling changing the permanency plan from family reunification to adoption. It addressed the length of time the case had been open, Mother's failure to make progress on her case plan despite multiple opportunities, and the best interests of JN; however, it did not directly address DFS' efforts to reunify the family. The court filed an *Order Upon Evidentiary Permanency Hearing* one month later which made no finding on DFS' reasonable efforts to reunify the family. The *Order* stated DFS "shall monitor the provision of services in accordance with a continuing case plan of working toward the permanency plan of adoption" and "the petition for termination of parental rights shall be filed by the State" in sixty days. Other specific language pertinent to this appeal will be addressed later in the opinion.

## STANDARD OF REVIEW

[¶9]    We review a change in permanency plan decision for abuse of discretion. *Interest of SRS*, 2023 WY 50, ¶ 21, 529 P.3d 1074, 1080 (Wyo. 2023) (quoting *Interest of SMD*, 2022 WY 24, ¶ 27, 503 P.3d 644, 652 (Wyo. 2022)). "To the extent that our review addresses the proper application and interpretation of the Child Protection Act, our review is *de novo*." *In re RE*, 2011 WY 170, ¶ 11, 267 P.3d 1092, 1096 (Wyo. 2011) (citing *In re SRB-M*, 2009 WY 22, ¶ 8, 201 P.3d 1115, 1117 (Wyo. 2009), *superseded on other grounds by statute*, Wyo. Stat. Ann. § 3-3-1101(a) (2007)).

2

## DISCUSSION

[¶10] Mother argues that the juvenile court's failure to make findings that DFS made reasonable efforts to finalize her case plan, as required by Wyo. Stat. Ann. § 14-3-431(f) (2021), was an abuse of discretion. We agree.

[¶11] Wyoming Statute § 14-3-431(k)(i) states the juvenile court "*shall*" determine "whether the department of family services has made reasonable efforts to finalize the plan[.]" (Emphasis added). The statute also states, "At the permanency hearing, the court *shall* make determinations of reasonable efforts as outlined in W.S. 14-3-440." Wyo. Stat. Ann. § 14-3-431(f) (emphasis added). Under § 14-3-440(f), the juvenile court "*shall* make the reasonable efforts determinations required under this section at every court hearing" and "[t]he reasonable efforts determinations *shall* be documented in the court's orders." (Emphasis added).

[¶12] "We have consistently found the word 'shall' in a statute to be mandatory." *Archer v. Mills*, 2021 WY 75A, ¶ 9, 491 P.3d 260, 262 (Wyo. 2021) (citing *In re MN*, 2007 WY 189, ¶ 5, 171 P.3d 1077, 1080 (Wyo. 2007)). This instance is no different; the governing statutes require the juvenile court to determine whether DFS made reasonable efforts to reunify the family. *See, e.g.*, *Interest of SRS*, 2023 WY 50, ¶ 22, 529 P.3d at 1080 ("To change a permanency plan, the juvenile court must determine whether the current plan is in the child's best interests and whether DFS has made reasonable efforts to finalize the plan." (quoting *Interest of AM*, 2021 WY 119, ¶ 11, 497 P.3d 914, 918 (Wyo. 2021))); *Interest of SW*, 2021 WY 81, ¶ 17, 491 P.3d 264, 269 (Wyo. 2021) (citing Wyo. Stat. Ann. § 14-3-431(k)(i)); *Interest of SMD*, 2022 WY 24, ¶ 45, 503 P.3d at 657 ("After a trial court makes [the reasonable efforts] determination, reunification efforts are no longer necessary because the plan no longer aims to reunify the family."); *Interest of AM*, 2021 WY 119, ¶ 16, 497 P.3d at 920. The "[r]easonable efforts determinations shall include whether or not services to the family have been accessible, available[,] and appropriate." Wyo. Stat. Ann. § 14-3-440(e).

[¶13] Reasonable efforts by DFS and a determination by the juvenile court that DFS made these efforts are not mere formalities. *See Matter of BAD*, 2019 WY 83, ¶ 29, 446 P.3d 222, 229 (Wyo. 2019) (Fox, J., specially concurring) ("We strictly construe the 'applicable statutes against those seeking termination and in favor of the non-consenting parent.'" (quoting *In re AE*, 2009 WY 78, ¶ 11, 208 P.3d 1323, 1326 (Wyo. 2009))). "[M]ost parents who come into contact with the Department are likely to have significant, unique challenges that make parenting difficult" and "it seems only fair that the reasonable efforts requirement be tailored to meet the propensities of those parents[.]" *Id.* at ¶ 37, 446 P.3d at 232 (quoting Jeanne M. Kaiser, *Finding a Reasonable Way to Enforce the Reasonable Efforts Requirement in Child Protection Cases*, 7 Rutgers J.L. & Pub. Pol'y 100, 118 (Fall 2009)). DFS' existence is premised, in part, on helping parents who have unique parenting

challenges overcome those challenges and reuniting the parent with their child. *Id.* at ¶ 24, 446 P.3d at 227-28. The parent-child relationship is a heavily protected fundamental right that requires DFS make reasonable efforts that "go beyond mere matters of form" and must "include real, genuine help to see that all things are done that might conceivably improve the circumstances of the parent and the relationship of the parent with the child." *Id.* at ¶¶ 23, 37, 446 P.3d at 227, 232 (quoting *Matter of Welfare of J.A.*, 377 N.W.2d 69, 73 (Minn. Ct. App. 1985)). To give the family the best chance at family reunification, these efforts must be made, and the juvenile court must determine the efforts were reasonable.

[¶14] However, when "determining what reasonable efforts shall be made with respect to a child and in making those reasonable efforts, the child's health and safety shall be the paramount concern." Wyo. Stat. Ann. § 14-3-440(b). "[C]hildren have a right to stability and permanency . . . [and] the children's right to stability and permanency is superior to the parent's right to familial association." *Interest of SRS*, 2023 WY 50, ¶ 30, 529 P.3d at 1082 (quoting *Matter of JPL*, 2021 WY 94, ¶ 62, 493 P.3d 174, 186 (Wyo. 2021)). "When the rights of a parent and the rights of a child are on a collision course, the rights of the parent must yield." *Id.* (quoting *Matter of JPL*, at ¶ 62, 493 P.3d at 186).

[¶15] Here, the juvenile court's written order was devoid of a reasonable efforts determination. The juvenile court made its findings on the record at the evidentiary permanency hearing but did not expressly state whether it determined DFS made reasonable efforts, as required by the statute. Instead, the juvenile court focused solely on the best interest of JN:

> [W]e want to give one more chance and one more chance. Almost always one more, giving chances to a parent for recovery . . . given another chance usually means something that's good for the kid, something that's in the best interest of the kid, so they are synonymous most of the time.
>
> But not here. Over and over and over again this little guy has suffered the consequences of [Mother's] inability to bring her behavior just in line; not recovered, completely recovered in all respects and everything that's happened in her life.

[¶16] The State contends that the reasonable efforts determination was implicit in the juvenile court's oral ruling. Although the court referred to Mother receiving multiple chances, that observation did not address the reasonableness of DFS' efforts.[2] *See Interest*

---

[2] Because no clear determination was made in the juvenile court's oral ruling, we decline to consider whether an oral ruling can satisfy the statutory requirement that the finding be documented in the written order. *See* Wyo. Stat. Ann. § 14-3-440(f).

*of SW*, 2021 WY 81, ¶ 20, 491 P.3d at 270 ("Wyo. Stat. Ann. § 14-3-440(e)'s 'accessible, available and appropriate' language and *In re HP*'s discussion of 'tailored' case plans suggest that the Department is obligated to make reasonable efforts suitable to the unique situation of the family involved." (quoting *Matter of BAD*, 2019 WY 83, ¶ 37, 446 P.3d at 232)); *Interest of BN*, 2022 WY 146, ¶¶ 34-37, 520 P.3d 529, 536-37 (Wyo. 2022) (holding DFS made reasonable efforts, despite limitations due to Mother's incarceration, by referring her to therapy, informing her of mental health supports available while incarcerated, providing parenting classes and books, and assisting in inpatient substance abuse treatment); *Interest of RR*, 2021 WY 85, ¶ 104, 492 P.3d 246, 272 (Wyo. 2021) (holding DFS' efforts were reasonable by providing substance abuse evaluation, drug testing, assistance with housing and food security, and assistance with applying for other benefit programs). With no clear determination of reasonableness, as required by statute, the juvenile court abused its discretion in changing the permanency plan from family reunification to adoption. *See Pettengill v. Castellow*, 2022 WY 144, ¶ 10, 520 P.3d 105, 109 (Wyo. 2022) (*Pettengill II*) (citing *e.g.*, *Stonham v. Widiastuti*, 2003 WY 157, ¶ 16, 79 P.3d 1188, 1193 (Wyo. 2003)) (remand may be necessary where record is not clear that court made required findings).

[¶17] We likewise reject the State's argument that reversal is not required even if the required reasonableness determination was not made because the record supports a finding that DFS did make reasonable efforts. *See Castellow v. Pettengill*, 2021 WY 88, ¶ 15, n.2, 492 P.3d 894, 900-01, 900 n.2 (Wyo. 2021) (*Pettengill I*); *Ianelli v. Camino*, 2019 WY 67, ¶ 36, 444 P.3d 61, 70 (Wyo. 2019). In *Pettengill I*, we recognized that in some situations, when evidence on the record supports the court's decision "the 'failure to explicitly comment on a statutory factor in the district court's opinion letter or order does not necessarily indicate that the court failed to consider that factor[;]'" however, such leniency does not apply in all cases. 2021 WY 88, ¶ 15, n.2, 492 P.3d at 900-01, n.2 (quoting *Shipley v. Smith*, 2020 WY 26, ¶ 13, 458 P.3d 852, 856 (Wyo. 2020)). Here, given the mandatory nature of the reasonableness determination and its importance to the proceedings, we do not usurp the role of the juvenile court and do not look to the record to make the determination.

## *CONCLUSION*

[¶18] The juvenile court was required to make the reasonable efforts determination and failed to do so. Without the determination, our consideration of Mother's second issue would be premature; we therefore do not address it. We reverse and remand to the juvenile court.