# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 105

APRIL TERM, A.D. 2024

October 4, 2024

IN THE INTEREST OF: JN, minor child,

RN,

Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-24-0072

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
Brittany Thorpe, Domonkos & Thorpe, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Christina F. McCabe, Deputy Attorney General; Wendy S. Ross, Senior Assistant Attorney General.

*Office of the Guardian ad Litem:*
Joseph R. Belcher, Director; Kim Skoutary Johnson, Chief Trial and Appellate Counsel.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    This case comes before us for a second time.  Previously, we reversed and remanded the juvenile court's order changing the permanency plan from family reunification to adoption (original order) because the juvenile court failed to address whether the Department of Family Services (DFS) had made reasonable efforts to reunify RN (Mother) with her son, JN, as required by Wyo. Stat. Ann. § 14-3-431(f).  *Int. of JN*, 2023 WY 83, ¶¶ 10, 18, 534 P.3d 455, 458, 460 (Wyo. 2023).  On remand, the juvenile court determined, based on the evidence before it at the time of its original order, that DFS had made reasonable efforts to reunify Mother with JN.  Mother appeals, challenging the juvenile court's refusal on remand to reconsider its original order based on new evidence and its decision that it was in JN's best interests to change the permanency plan from family reunification to adoption.  We affirm.

### ISSUES

[¶2]    Mother raises one issue which we restate as two:

> 1.    Did the juvenile court err on remand when it refused to reconsider its original order changing the permanency plan from family reunification to adoption based on new evidence?
>
> 2.    Was there sufficient evidence supporting the juvenile court's decision that it was in JN's best interests to change the permanency plan from family reunification to adoption?

### FACTS

[¶3]    On April 9, 2021, a police officer with the Cheyenne Police Department responded to a local hotel because Mother refused to leave at her scheduled checkout time.  Mother, who was with her six-year-old son, JN, was intoxicated.  Mother told the officer she was planning to go home with JN but her "pretty violent boyfriend" also lived with them.  JN confirmed Mother's boyfriend was violent.  The officer took JN into protective custody due to Mother's intoxication and inability to provide him a safe place to live.  Mother was transported to the local emergency room, where she tested positive for amphetamines and had a blood alcohol content of .323.

[¶4]    On April 12, 2021, the State, through the district attorney's office, filed a petition alleging Mother had neglected JN.  The next day, the juvenile court held a shelter care hearing and found it was contrary to JN's welfare to remain with Mother.  It placed JN in the temporary custody of the State, and DFS placed him in nonrelative foster care.  The

1

court ordered the permanency plan to be family reunification. It appointed an attorney for Mother, a guardian ad litem (GAL), and a court-appointed special advocate (CASA) for JN.

[¶5]   In June 2021, DFS developed a case plan that required Mother to provide for JN's basic needs, engage in therapeutic counseling with JN, maintain sobriety, submit to weekly random drug testing in Cheyenne, obtain adequate housing, and address her relationship with her abusive boyfriend. About two months later, in August 2021, the parties entered into a consent decree holding the neglect petition in abeyance for six months. The consent decree required Mother to comply with the law and her case plan and to refrain from using drugs, alcohol, and nonprescription mood-altering substances. If Mother complied with these requirements, the court would dismiss the neglect petition.

[¶6]   Mother made some progress on her case plan. She was employed, obtained safe and appropriate housing, and participated in supervised visitation and therapeutic parenting sessions with JN. However, she continued to have contact with her abusive boyfriend and failed to submit to random drug testing in Cheyenne, instead paying out-of-pocket for scheduled drug testing in Colorado. These drug tests were negative for illegal drugs.

[¶7]   On January 5, 2022, the multidisciplinary team (MDT)—Mother, the DFS caseworker, the assistant district attorney, JN's foster mother, the GAL, and JN's therapist, among others—met and recommended Mother be allowed to transport JN from school to her home for unsupervised visitation with the condition that preceding each transport, Mother provide proof of a negative drug test. The MDT also filed a motion with the juvenile court to extend the consent decree for six months to allow Mother more time to work her case plan. The juvenile court granted the motion.

[¶8]   Between January 24, 2022, and February 24, 2022, Mother transported JN from school to her home only one time. This was because she either missed or refused to take a drug test or tested presumptive positive for methamphetamine. These problems led to the termination of Mother's permission to transport JN for unsupervised visitation, but the MDT agreed to reevaluate the situation if Mother complied with random drug testing three times a week for three weeks and all tests were negative for illegal drugs. During the three-week trial period, Mother tested negative seven times, failed to appear for testing six times, and once tested presumptive positive for methamphetamine. Mother was also late for her therapeutic parenting sessions with JN. Unsupervised visitation was not reestablished, but arrangements were made for supervised visits.

[¶9]   In March 2022, the State filed a motion to revoke the consent decree. It alleged that since November 2021, Mother had missed 29 drug tests, refused to test 9 times, and tested positive for methamphetamine 4 times. Mother contested the revocation allegations, and the juvenile court scheduled an evidentiary hearing for August 19, 2022. In the meantime, Mother continued to miss drug tests and maintained her relationship with her abusive

2

boyfriend. Although she continued supervised visitation with JN, he was "unhappy or stressed out" and began exhibiting troubling behaviors, including smearing feces on his foster mother's bathroom wall.

[¶10] Mother failed to appear at the scheduled hearing on the motion to revoke the consent decree. The juvenile court revoked the consent decree and adjudicated JN neglected by Mother. It ordered the permanency plan to remain family reunification.

[¶11] In September 2022, the case plan was updated to require Mother to attend inpatient drug treatment. That same month, the MDT met and could not reach a unanimous decision on the permanency plan. JN's foster mother reported that during the summer, JN began "really, really hyperactive behaviors like touching everything, forgetting everything" and these behaviors were ongoing. He also began lying and stealing. She recommended the permanency plan be changed from family reunification to adoption. The CASA agreed with this recommendation, sharing that JN "really wants to just stay with [his foster mother] . . . . It's been over 15 months, and we are clear back to zero[.]" The GAL and the assistant district attorney also recommended the permanency plan be changed to adoption given the case had been pending over a year without achieving family reunification, JN's need for stability and permanency, and Mother's inability to stay sober. The DFS caseworker and JN's therapist recommended the permanency plan remain family reunification given Mother's willingness to attend inpatient drug treatment. On October 14, 2022, the GAL filed a written motion to change the permanency plan from family reunification to adoption. She argued the change would be in JN's best interests given Mother's continuous drug relapses.

[¶12] On November 4, 2022, the juvenile court held a permanency hearing. The day before the hearing, Mother checked herself into inpatient drug treatment. At the hearing, JN's foster mother and the DFS caseworker testified that JN and Mother shared a strong bond. The foster mother nevertheless recommended the permanency plan be changed to adoption because Mother had failed to obtain sobriety in the 18 months that the case had been open and JN suffered from a lack of permanency. The CASA also testified in favor of adoption due to the lengthy time the case had been open, Mother's failure to seek inpatient drug treatment until the day before the permanency hearing, and JN's need for a permanent home. The DFS caseworker testified that JN had previously been in protective custody for ten months in 2019 because of Mother's substance abuse. She explained the services DFS had provided in the current case to help Mother complete the case plan, including supervised visits with JN, drug testing, housing assistance, food stamps, addiction medication, and support groups. The DFS caseworker opined that the permanency goal should remain family reunification because Mother was in treatment and should be given the chance to become a fit parent. She agreed Mother's lack of sobriety was a "massive concern." She acknowledged that the usual goal is to achieve permanency by 12 months and that here family reunification had not been attained after 18 months.

[¶13]   The juvenile court ruled orally from the bench that the permanency plan be changed from family reunification to adoption because "there [was] no longer any chance that reunification will work."  It recognized the bond between Mother and JN.  The court noted that, while it is usually in the best interests of a child to give a parent "one more chance," this was not the usual case.  It stated: "Over and over and over again this little guy has suffered the consequences of [Mother's] inability to bring her behavior . . . in line[.]"  It pointed out the length of time the case had been open, Mother's inability to stay sober, and the need to ensure JN's safety and well-being.  A written Order Upon Evidentiary Permanency Hearing followed the oral ruling.  The written order changed the permanency plan from family reunification to adoption and ordered the State to file a petition for termination of parental rights within 60 days.  Neither the juvenile court's oral ruling nor its written order addressed whether DFS had made reasonable efforts to achieve the permanency plan of family reunification as required by Wyo. Stat. Ann. § 14-3-431(f).

[¶14]   Mother appealed the juvenile court's Order Upon Evidentiary Permanency Hearing. In August 2023, we reversed and remanded because the juvenile court had failed to make the statutorily mandated reasonable efforts determination.  *Int. of JN*, ¶¶ 10, 18, 534 P.3d at 458, 460; Wyo. Stat. Ann. § 14-3-431(f) ("At the permanency hearing, the court shall make determinations of reasonable efforts . . . .").

[¶15]   On remand, the juvenile court noted that additional reviews, proceedings, and orders had occurred in the case during the pendency of Mother's appeal.  It held a hearing to allow the parties to address the effect of our remand, "including whether new or developing issues should be addressed or the facts reopened."[1]   Thereafter, the juvenile court issued a Findings and Order on Remand.  It concluded its obligations on remand were limited to making the reasonable efforts determination and that determination should be made based on the evidence before it at the time of the November 2022 permanency hearing.   It reasoned:

> A clear reading of the Wyoming Supreme Court's *Opinion* enforces this Court's position that no findings can or should be made as to matters not existing before the Court on November 4, 2022.  Permanency would have no meaning in any child's life if, in the hiatus between permanency and termination, (appeal or no appeal) the *Order* did not stand. Thus, as at the time of the hearing, the findings made here are those that the testimony and record to ***that date*** justified and most certainly should have been announced or reduced to writing at that time.

---

[1] It appears the State and DFS briefed this issue prior to the hearing and the hearing was transcribed, but the briefs and transcript are not included in the appellate record.

4

Based on the evidence before it at the time of the November 2022 hearing, the juvenile court determined DFS had made reasonable efforts to achieve family reunification. It reaffirmed its original order changing the permanency plan from family reunification to adoption.

[¶16]  Mother again appealed, challenging both the Order Upon Evidentiary Permanency Hearing and the Findings and Order on Remand.

## *DISCUSSION*

### I.  *Did the juvenile court err on remand when it refused to reconsider its original order changing the permanency plan from family reunification to adoption based on new evidence?*

[¶17]  During the pendency of Mother's first appeal, the MDT met three times and the juvenile court held a 12-month permanency hearing.[2]  Mother included the reports from those MDT meetings in the appellate record in this case.  According to her, these reports show that since the November 2022 permanency hearing, she has completed inpatient drug treatment, moved to a sober living community which would allow JN to live with her, participated in therapy and support groups, met weekly with JN, and ended her relationship with her abusive boyfriend.  Mother also included in the appellate record a motion by DFS to stay the juvenile court's order requiring it to file a petition to terminate Mother's parental rights because DFS did not support changing the permanency plan from family reunification to adoption.  While she admits the DFS caseworker recently stated she supported adoption for JN, Mother claims the caseworker did so only because the court denied the motion to stay and ordered the parties to pursue adoption.

[¶18]  Mother relies on these post-November 2022 permanency hearing facts to argue there was insufficient evidence that a change in the permanency plan was in JN's best interests.  On remand, the juvenile court refused to reconsider its November 2022 best interests determination or to consider post-November 2022 evidence.  It limited its decision to the question of DFS' reasonable efforts at reunification based on the evidence presented at the November 2022 permanency hearing.  Mother does not specifically challenge the court's

---

[2] A juvenile court's order changing a permanency plan from family reunification to adoption is immediately appealable because it affects a parent's substantial rights and is made in a special proceeding.  W.R.A.P. 1.05(b) (an "appealable order" includes "[a]n order affecting a substantial right made in a special proceeding").  *See also KC v. State*, 2015 WY 73, ¶ 33, 351 P.3d 236, 245 (Wyo. 2015) (a juvenile court's order changing the permanency plan from reunification to adoption is immediately appealable because it affects substantial rights and is made in a special proceeding (quoting *In re HP*, 2004 WY 82, ¶ 23, 93 P.3d 982, 989 (Wyo. 2004))).  While an appeal challenging a change in the permanency plan from family reunification to adoption is pending, the MDT continues to meet and make recommendations and the juvenile court continues to hold a review hearing every 6 months and a permanency hearing every 12 months as required by the Child Protection Act.  Wyo. Stat. Ann. § 14-3-431(c), (d).

refusal to reconsider its best interests analysis in light of events that occurred after the November 2022 hearing, but she does rely on these new facts to support her argument that there was insufficient evidence showing a change in permanency was in JN's best interests. Consequently, we address her implicit argument that the juvenile court erred on remand by not considering developments after the November 2022 permanency hearing and their effect on its November 2022 best interests decision.

[¶19]   First, as a matter of law, when we remand a case, a lower court "must substantially comply with the combined directions, purpose, and intent of [our] opinion and mandate." *Matter of Adoption of BBC*, 849 P.2d 769, 772 (Wyo. 1993). *See also Liljestrand v. Dell Enters., Inc.*, 842 N.W.2d 575, 579 (Neb. 2014) ("The construction of a mandate issued by an appellate court presents a question of law."). Next, as a matter of discretion, "[w]here a case is remanded without direction or restriction as to the method to be utilized for determining the issues in the case, it is up to the trial court on remand to determine . . . whether the record before it is sufficient, or whether additional evidence should be taken." 5 Am. Jur. 2d *Appellate Review* § 688, at 528–29 (2018). *See also Belden v. Thorkildsen*, 2008 WY 145, ¶ 9, 197 P.3d 148, 151 (Wyo. 2008) ("We review [for an abuse of discretion a] court's decision regarding the receipt of additional evidence at the hearing after remand . . . ." (citing *S-Creek Ranch, Inc. v. Monier & Co.*, 518 P.2d 930, 931 (Wyo. 1974))); *Darling Ingredients Inc. v. City of Bellevue*, 986 N.W.2d 757, 762 (Neb. 2023) (where trial court's judgment was reversed on appeal and the case was remanded without specific instructions, the "court had discretion as to how to proceed, and deciding the case without receiving additional evidence was within the scope of [the appellate court's] broad mandate"); *Taszarek v. Lakeview Excavating, Inc.*, 2021 ND 237, ¶ 5, 968 N.W.2d 146, 150 ("We have repeatedly held that, when we remand for redetermination of an issue without specifying the procedure to be followed, the district court [has the discretion to] decide the issue based on the evidence already before it or may take additional evidence." (citation and internal quotation marks omitted)). "In determining whether the [lower] court abused its discretion, we ask whether the . . . court reasonably could have concluded as it did." *Fuger v. Wagoner*, 2024 WY 73, ¶ 18, 551 P.3d 1085, 1091 (Wyo. 2024) (quoting *Deede v. Deede*, 2018 WY 92, ¶ 7, 423 P.3d 940, 942 (Wyo. 2018)).

[¶20]   We first address the juvenile court's substantial compliance with our opinion and mandate. In Mother's first appeal, we concluded the juvenile court abused its discretion by changing the permanency plan from family reunification to adoption without making the reasonable efforts determination required by statute. *Int. of JN*, ¶¶ 10, 15–16, 534 P.3d at 458–59. We rejected the State's argument that reversal was not required because the record supported a finding that DFS made reasonable efforts. *Id.* ¶ 17, 534 P.3d at 459. We declined to look to the record to make the reasonable efforts determination because of its "mandatory nature" and "importance to the proceedings." *Id.* ¶ 17, 534 P.3d at 460. Our opinion and mandate "reversed and remanded" to the juvenile court. *Id.* ¶ 18, 534 P.3d at 460. The juvenile court substantially complied with our opinion and mandate when it addressed DFS' reasonable efforts and made a determination.

6

[¶21]   Next, we examine the juvenile court's discretionary decisions on remand.  Because we did not direct the juvenile court to take any specific action on remand, require it to consider additional evidence, or suggest that further proceedings were required, the juvenile court had discretion on whether to make the reasonable efforts determination from the evidence presented at the November 2022 permanency hearing or whether additional proceedings were necessary.

[¶22]   The juvenile court did not abuse its discretion when it decided the reasonable efforts determination could be made from evidence presented at the November 2022 hearing.  That hearing was necessarily directed at DFS' reasonable efforts to achieve reunification and whether a change in the permanency plan was in JN's best interests.  *See Int. of RR*, 2021 WY 85, ¶ 97, 492 P.3d 246, 270 (Wyo. 2021) ("To order a change in permanency from family reunification to adoption, a juvenile court must find that DFS made reasonable efforts to achieve reunification without success and that reunification is no longer in the children's best interest." (citing *Int. of SW*, 2021 WY 81, ¶ 17, 491 P.3d 264, 269 (Wyo. 2021))).  The parties presented evidence on both issues and had a full and fair opportunity to be heard on them.  Because the reasonable efforts issue was fully explored at the November 2022 permanency hearing, the juvenile court's decision to base the reasonable efforts determination on the evidence from that hearing was not an abuse of discretion.  *See Belden*, ¶ 9, 197 P.3d at 151 (district court's refusal to consider additional evidence on remand complied with our mandate reversing the judgment and remanding "for further proceedings consistent with this opinion" because "our prior decision only required that the court consider evidence of an oral contract that it had previously admitted, but declined to consider [and] [w]e did not state or suggest that the court was required to accept additional evidence regarding [a different issue]" (citation omitted)); *S-Creek Ranch*, 518 P.2d at 931 ("Where a case was tried to a court and the court erred as to a rule of law in arriving at its judgment, the case may not necessarily always be remanded for a new trial; and *where the factual situation was fully explored there is little reason for a new trial*[.]" (emphasis added) (citation omitted)).  *See also Darling Ingredients*, 986 N.W.2d at 761–62 (while a remand on the merits normally resets the parties back to their positions before the trial, there are exceptions to that rule including "where an issue has been tried but not yet decided by the trial court"); *Matter of Kegel*, 271 N.W.2d 114, 116, 118 (Wis. 1978) (where appellate court remanded a termination of parental rights order to the juvenile court for written findings, conclusions and a judgment, juvenile court did not abuse its discretion on remand by basing its findings, conclusions and judgment on the facts existing at the time of its original order where "remand order was to cure a formal, but important, defect in the proceedings and did not require that additional evidence be taken").[3]

---

[3] We recognize that child protection cases are unique.  The family dynamics are often fluid and require the juvenile court to balance a parent's right to familial association and a child's right to stability and permanency.  Here, the juvenile court determined JN's need for permanency outweighed Mother's right to

***II.*** ***Was there sufficient evidence supporting the juvenile court's decision that it was in JN's best interests to change the permanency plan from family reunification to adoption?***

[¶23] Mother argues the juvenile court abused its discretion when it changed the permanency plan from family reunification to adoption because there was insufficient evidence that the change was in JN's best interests. The juvenile court's best interests decision was based on the evidence before it at the time of the November 2022 permanency hearing and, as explained above, it did not abuse its discretion on remand by refusing to reconsider that decision in light of new evidence. As a result, our review of this issue is limited to the evidence before the juvenile court at the time of the November 2022 permanency hearing. *Cf. Beaulieu v. Florquist*, 2001 WY 33, ¶ 11, 20 P.3d 521, 526 (Wyo. 2001) ("When discovery materials are filed after the date of a hearing or ruling on any subject, we will not consider them as part of 'the record as it existed at the time the trial court ruled' [for purposes of reviewing a trial court's summary judgment order] unless the [trial court's order] specifically refer[red] to the discovery materials that are included in the transmitted record. If such a reference is missing, it will be presumed that they were not before the trial court for purposes of the hearing or ruling, *and their use will not be permitted in this court*." (emphasis added) (citation omitted)). *See also Hudson v. Aceves*, 516 S.W.3d 529, 539 (Tex. App. 2016) ("It is axiomatic that an appellate court reviews the actions of the trial court based on the record before the court at the time it makes its ruling."); *Ackison v. Gergley*, 2022-Ohio-3490, ¶ 46, 198 N.E.3d 139, 152 (Ct. App.) ("Appellate review is limited to the record as it existed at the time the trial court rendered its judgment." (citations omitted)).

[¶24] We review a juvenile court's order changing a permanency plan from family reunification to adoption as follows:

> "To order a change in permanency from family reunification to adoption, a juvenile court must find that DFS made reasonable efforts to achieve reunification without success and that reunification is no longer in the children's best

---

familial association when it refused to consider events that occurred after the November 2022 permanency hearing. *Int. of SRS*, 2023 WY 50, ¶ 30, 529 P.3d 1074, 1082 (Wyo. 2023) ("[C]hildren have a right to stability and permanency . . . [and] the children's right to stability and permanency is superior to the parent's right to familial association." (quoting *Matter of JPL*, 2021 WY 94, ¶ 62, 493 P.3d 174, 186 (Wyo. 2021))). While the juvenile court did not abuse its discretion by not considering post-November 2022 events, a decision on whether new facts should be considered on remand, absent a mandate directing otherwise, must be made on a case-by-case basis. Additionally, we note that in most cases, including this one, new facts may be relevant at a later termination hearing. *Matter of KGS*, 2017 WY 2, ¶ 16, 386 P.3d 1144, 1147 (Wyo. 2017) (while past behavior is a relevant consideration, a parent's fitness must be determined as of the time of the termination trial).

8

interest." *Int. of RR*, 2021 WY 85, ¶ 97, 492 P.3d 246, 270 (Wyo. 2021) (citing *Int. of SW*, 2021 WY 81, ¶ 17, 491 P.3d 264, 269 (Wyo. 2021)).

"We review a juvenile court's change in permanency plan for abuse of discretion." *Int. of SRS*, 2023 WY 50, ¶ 21, 529 P.3d 1074, 1080 (Wyo. 2023) (quoting *Int. of SMD*, 2022 WY 24, ¶ 27, 503 P.3d 644, 652 (Wyo. 2022)). "A court abuses its discretion if 'it acts in a manner which exceeds the bounds of reason under the circumstances.'" *Id.* (quoting *Int. of SMD*, 2022 WY 24, ¶ 27, 503 P.3d at 652).

"In evaluating the sufficiency of the evidence in a neglect proceeding, we measure the juvenile court's decision against the preponderance of the evidence standard." *Int. of DT*, 2017 WY 36, ¶ 30, 391 P.3d 1136, 1145 (Wyo. 2017) (quoting *In re RE*, 2011 WY 170, ¶ 12, 267 P.3d 1092, 1096 (Wyo. 2011)). "When sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the prevailing party, giving every reasonable inference to the prevailing party below, assuming all evidence favorable to the prevailing party is true, and discounting any conflicting evidence brought by the unsuccessful party." *Int. of SRS*, 2023 WY 50, ¶ 21, 529 P.3d at 1080 (quoting *Int. of SMD*, 2022 WY 24, ¶ 27, 503 P.3d at 652).

*Int. of SK*, 2024 WY 25, ¶¶ 21–23, 544 P.3d 606, 613–14 (Wyo. 2024).

[¶25] The evidence leading up to and presented at the November 2022 permanency hearing supports the juvenile court's decision that it was in JN's best interests to change the permanency plan from family reunification to adoption. JN was taken into protective custody in early April 2021 due to Mother's intoxication and her inability to provide him a safe place to live because she resided with her violent boyfriend. The case plan, arising from these events, required Mother to, among other things, submit to random drug testing, maintain sobriety, and address her abusive relationship with her boyfriend. The neglect petition was held in abeyance to give Mother time to work her case plan, but she was unable to maintain sobriety, follow through with random drug testing, or satisfactorily address her relationship with her boyfriend. In September 2022, Mother was required to participate in inpatient drug treatment, but she did not check into treatment until the eve of the November 2022 permanency hearing. Despite 18 months of rehabilitative efforts directed at reunification, Mother was unable to meet the parenting goals required by her case plan.

9

[¶26] For 18 months, JN suffered from a lack of permanency. According to his foster mother, when JN first came to live with her, he was "very well behaved" and "did . . . great." By summer 2022, he had just "check[ed] out" and was no longer "full of life." He began smearing feces on the walls and started lying and stealing. JN was no longer excited about visitation with Mother and was "tired of being lied to and let down." It was the foster mother's opinion that JN needed structure and routine, something Mother could not give him despite DFS' efforts and the provision of rehabilitative tools for 18 months.

[¶27] Mother argues the juvenile court abused its discretion by changing the permanency plan because of the strong bond she shares with JN, the fact she attended family therapy, was employed and had housing, and the opinions of JN's therapist and the DFS caseworker that the permanency plan should remain family reunification until she completed inpatient drug treatment. Our caselaw is clear; "[p]arents are not afforded an indefinite period to achieve their case plan goals[.] Even when progress has been made during some point of a case plan, a juvenile court does not abuse its discretion . . . when sufficient progress is not made within a reasonable time." *Int. of SRS*, 2023 WY 50, ¶ 25, 529 P.3d 1074, 1081 (Wyo. 2023) (citations omitted). Mother failed to make sufficient progress on the goals of her case plan, in particular, on her sobriety, to achieve reunification. While Mother, the DFS caseworker, and JN's therapist believed she should be given "one more chance," the juvenile court rejected this argument because more time would not be in JN's best interests. The record supports the juvenile court's best interests decision. *See Int. of SRS*, ¶ 29, 529 P.3d at 1081–82 ("Father had ample time to make progress on his case plan yet substantial progress still needed to be made after eighteen months of assistance. Father regressed as the case plan prolonged even though he was aware the permanency plan could change to adoption. The record supports the finding that Father made little progress, and the juvenile court did not abuse its discretion by declining to give Father more time.").

## *CONCLUSION*

[¶28] The juvenile court's order on remand substantially complied with our previous opinion and mandate, and its refusal to consider new evidence on remand was not an abuse of discretion. There was sufficient evidence from the November 2022 permanency hearing showing it was in JN's best interests to change the permanency plan from family reunification to adoption.

[¶29] We affirm.