# THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 11

OCTOBER TERM, A.D. 2024

January 24, 2025

IN THE INTEREST OF: PT, minor child,

VT,

Appellant
(Respondent),

v.                                                          S-24-0159

THE STATE OF WYOMING,

Appellee
(Petitioner).

*Appeal from the District Court of Laramie County*
*The Honorable Robin S. Cooley, Judge*

*Representing Appellant:*
    Brittany Thorpe of Domonkos & Thorpe, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
    Bridget Hill, Attorney General; Christina F. McCabe, Deputy Attorney General.

*Guardian ad Litem:*
    Joseph R. Belcher, Director, and Kim Skoutary Johnson of the Wyoming Office of
    the Guardian ad Litem.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Law enforcement took PT into protective custody on December 8, 2021.  Thereafter, the Department of Family Services (DFS) implemented a case plan with a goal of family reunification.  When Father was arrested on new felony drug charges after the case had been open for almost two years, the juvenile court changed the permanency plan to adoption.   Although both the juvenile court's oral and written orders included a determination that DFS had made reasonable efforts to reunify PT with Father, he contends the orders do not comply with Wyoming Statute § 14-3-440(f) (LexisNexis 2023).  Father asserts the orders are defective because they do not contain a list of the efforts made by DFS.  We affirm.

## ISSUE

[¶2]    Father raises two issues which we rephrase and consolidate into a single issue: Does the juvenile court's permanency order comply with Wyoming Statute § 14-3-440(f) when the reasonable efforts determination does not include a list of the efforts made by DFS?

## FACTS

[¶3]    On December 8, 2021, an eight-year-old child, PT, brought a vape pen containing THC[1] to his elementary school.  The school principal contacted the Cheyenne Police Department to report the vape pen.  She also expressed concerns about PT's living conditions.  Officers and a DFS worker went to PT's residence to conduct a home visit.  They discovered drug paraphernalia in plain view in the living room and one of the bedrooms. The officers arrested PT's mother, CM, for child endangerment and outstanding warrants.  PT was placed in protective custody.

[¶4]    PT's biological father, VT, was in jail at the time the child was taken into protective custody.  He was released in January 2022.  DFS developed a case plan to address the family's needs, which Father signed in February 2022.  Father's goals included abstaining from drug use, submitting to random drug testing, addressing his mental health needs, and finding and maintaining stable employment and housing.

[¶5]    After he was released from jail, Father attended intensive outpatient treatment at the Volunteers of America (VOA) in Gillette.  He obtained employment and appeared to be doing well.  Once he completed treatment, he moved to Cheyenne to be closer to PT. Father found employment in Cheyenne, began participating in family therapy and supervised

---

[1] THC is the abbreviation for tetrahydrocannabinol, which is "the psychoactive component of the cannabis plant[.]" Wyo. Stat. Ann. § 11-51-101(a)(vii)(A) (LexisNexis 2023).  Possession of THC is unlawful. *See* Wyo. Stat. Ann. § 35-7-1031 (LexisNexis 2023); Wyo. Stat. Ann. § 35-7-1014 (d)(xxi) (LexisNexis 2023).

1

visits with PT, and seemed to be working to complete his case plan. At that time, DFS recommended changing the case plan to reunification with Father.

[¶6] By January 2023, DFS had referred Father to the Dad's Making a Difference Program to assist with improving his employment opportunities. He was making progress on his case plan, and he was moving toward having unsupervised visits with PT. Father was providing negative drug tests, and his family therapy and visits with PT were going well.

[¶7] By May 2023, Father was doing so well that DFS decided to transition PT into a trial home placement with Father. PT was placed in Father's home on June 15, 2023. Unfortunately, this placement only lasted a few weeks. Once the trial home placement began, Father refused to submit to any drug testing, even after being warned that PT would not be able to remain in his home if he did not comply. During this same time frame, Father was also allowing PT to have unsupervised contact with Mother, even though he knew any contact between PT and Mother was supposed to be conducted in a therapeutic setting due to Mother's erratic behaviors. Father also stopped taking PT to their family therapy appointments, and Father fell asleep during the one appointment they did attend. DFS removed PT from Father's home on July 24, 2023. On August 3, 2023, Father was arrested and charged with new felony charges involving the possession and/or distribution of fentanyl.[2] After Father received new criminal charges and they were no closer to reunification than at the beginning of the case, despite almost two years of services, DFS recommended changing the permanency plan to adoption.

[¶8] An evidentiary permanency hearing was held on February 7, 2024. At the hearing, DFS presented evidence showing the agency had provided numerous services to the family including, but not limited to: supervised and therapeutic visitation, mental health counseling for the parents and PT, family therapy, referrals to the Dads Making a Difference program, substance abuse monitoring, gas cards for Father to attend visits, a trial home placement, a referral to Family to Family for other services, and discussions about housing referrals and possible rent assistance once Father obtained that housing. Despite all these services, Father continued to engage in substance abuse and criminal behavior.

[¶9] After Father was incarcerated in August 2023, the only service DFS provided to Father was continuing to facilitate therapeutic visitation between Father and PT. DFS was willing to provide Father additional services, including assisting him with finding housing and employment, once Father was expected to be released from jail. Even if Father was

---

[2] Although the parties asked the juvenile court to take judicial notice of the plea agreement that had been made of record in Father's criminal file 2023-CR-36-600, neither party designated the plea agreement or any portions of Father's criminal file as part of the record on appeal. Consequently, the exact nature of Father's criminal charges is unclear.

going to be released soon after the permanency hearing, DFS workers testified they did not believe he would be able to complete his case plan timely because Father had a history of doing well for a period of time and then falling apart. These DFS workers opined additional delays were not in PT's best interest, and the permanency plan should be changed to adoption.

[¶10] Because Father had not yet formally entered his guilty pleas or been sentenced in his criminal case, he did not testify at the permanency hearing. However, the State and Father's attorney outlined the terms of the plea agreement they had reached in his criminal case. In exchange for Father pleading guilty to two felony counts of possession with intent to deliver fentanyl, the State would agree to recommend a sentence of four-to-six years in prison, suspended in lieu of three years of supervised probation. Father's attorney argued Father had a strong bond with PT, and he should be given additional time to prove he could be an appropriate placement for the child.

[¶11] The juvenile court took the matter under advisement and issued an oral ruling on March 7, 2024. The juvenile court found:

> As to the -- as to the failures, I first have to address the reasonable efforts to cure them or to assist with them, and I'll do that by making a finding first that more than reasonable efforts have been made by the Department, although there was little case planning that could happen while, for instance [Father] was in custody. Efforts were made. And when he's not in custody he's been a part of case planning, not in custody, and those efforts have failed.

The juvenile court further found that if there were any services DFS had not provided, it was because the parents were not cooperating or would not follow through with those services. The juvenile court again stated reasonable efforts had been made to reform the conduct of the parents and achieve reunification, and it was in PT's best interest to change the permanency plan to adoption. The juvenile court entered a written order changing the permanency plan to adoption on March 29, 2024. This order contained a finding that DFS made reasonable efforts to effectuate the permanency plan of reunification, but progress had not been made towards that goal. This appeal timely followed.

## STANDARD OF REVIEW

[¶12] We review a change in permanency plan for an abuse of discretion. *In re JN*, 2023 WY 83, ¶ 9, 534 P.3d 455, 457–58 (Wyo. 2023) (citing *In re SRS*, 2023 WY 50, ¶ 21, 529 P.3d 1074, 1080 (Wyo. 2023)). We review the proper application and interpretation of the Child Protection Act de novo. *Id.* (citing *In re RE*, 2011 WY 170, ¶ 11, 267 P.3d 1092, 1096 (Wyo. 2011)). "When interpreting statutes, 'we seek the legislature's intent as

reflected in the plain and ordinary meaning of the words used in the statute,' giving effect to every word, clause, and sentence." *BC-K v. State*, 2022 WY 80, ¶ 11, 512 P.3d 634, 638 (Wyo. 2022) (quoting *Bernal-Molina v. State*, 2021 WY 90, ¶ 13, 492 P.3d 904, 908 (Wyo. 2021)). "The plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. Where there is plain, unambiguous language used in a statute there is no room for construction." *Id.* (quoting *Schneider v. State*, 2022 WY 31, ¶ 9, 505 P.3d 591, 594 (Wyo. 2022)). "The 'omission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them.'" *Id.* (quoting *Hugus v. Reeder*, 2022 WY 13, ¶ 8, 503 P.3d 32, 34 (Wyo. 2022)).

## DISCUSSION

[¶13] Father argues Wyoming Statute § 14-3-440(f) requires the juvenile court to "state what reasonable efforts were provided" when making its reasonable efforts determination. He asserts the juvenile court's failure to do so was an abuse of discretion, and the permanency order is null and void as a matter of law because it does not include a list of those efforts. Father does not challenge the sufficiency of the evidence supporting the juvenile court's reasonable efforts determination. The State asserts the juvenile court's oral and written orders contained the required reasonable efforts determination, and Wyoming Statute § 14-3-440(f) does not require the juvenile court to list all the efforts made by DFS in its order.

[¶14] With limited exceptions, the Child Protection Act requires DFS to make reasonable efforts "to preserve and reunify the family[.]" Wyo. Stat. Ann. § 14-3-440(a) (LexisNexis 2023). This case involves the interpretation and application of Wyoming Statute § 14-3-440(f) which states: "The court shall make the reasonable efforts determinations required under this section at every court hearing. The reasonable efforts determinations shall be documented in the court's orders." The plain, ordinary meaning of "determination" is: "The act of deciding something officially; esp., a final decision by a court or administrative agency . . . ." *Determination*, Black's Law Dictionary (12th ed. 2024); *see also* https://www.merriam-webster.com/dictionary/determination (defining "determination" as "a judicial decision settling and ending a controversy"). Therefore, Wyoming Statute § 14-3-440(f) requires the juvenile court's final decision regarding whether the efforts made by DFS to preserve and reunify the family were reasonable to be documented in its permanency order. The statute does not set forth a requirement that the juvenile court's order also list those efforts that were provided by DFS. We will not read that requirement into the statute. *See BC-K*, 2022 WY 80, ¶ 11, 512 P.3d at 638 (quoting *Hugus*, 2022 WY 13, ¶ 8, 503 P.3d at 34).

[¶15] We have recognized a juvenile court's compliance with Wyoming Statute § 14-3-440(f) is mandatory. *See In re JN*, 2023 WY 83, ¶¶ 12–18, 534 P.3d at 458–60 (reversing and remanding a permanency order that was devoid of a reasonable efforts determination).

4

In *In re JN*, we held a permanency order must contain a reasonable efforts determination, and we will not usurp the role of the juvenile court by looking at the record to make that determination ourselves if it is absent from the order. *Id.* We held: "Reasonable efforts by DFS and a determination by the juvenile court that DFS made these efforts are not mere formalities." *Id.* at ¶ 13, 534 P.3d at 458 (citing *Matter of BAD*, 2019 WY 83, ¶ 29, 446 P.3d 222, 229 (Wyo. 2019) (Fox, J., specially concurring)). We further stated: "To give the family the best chance at family reunification, these efforts must be made, and the juvenile court must determine the efforts were reasonable." *Id.* We remanded the case to the juvenile court because it did not "expressly state whether it determined DFS made reasonable efforts, as required by the statute." *Id.* at ¶ 15, 534 P.3d at 459. However, we did not hold the juvenile court's order must also "expressly state" which reasonable efforts were made by DFS. *See id.* at ¶¶ 12-17, 534 P.3d at 458–60. Father cited to no case where we have ever held Wyoming Statute § 14-3-440(f) contains such a requirement. Although such a list might be helpful to this Court when reviewing the sufficiency of the evidence supporting the juvenile court's reasonable efforts determination, which is not at issue in this appeal, it is not required by Wyoming Statute § 14-3-440(f).

[¶16] In the case that is presently before the Court, the juvenile court's oral and written orders did "expressly state" DFS made reasonable efforts to preserve and reunify the family. *See In re* JN, 2023 WY 83, ¶ 15, 534 P.3d at 459. Although not required, the juvenile court also listed some of the efforts DFS had provided to the family in its oral ruling. The juvenile court stated "counseling efforts, education efforts, [and] sobriety efforts" had been "supplied over and over again" by DFS, but they had been unsuccessful. The juvenile court made the reasonable efforts determination required by Wyoming Statute § 14-3-440(f), and it did not err or abuse its discretion by not specifically listing all the efforts made by DFS in its oral and written orders.

## CONCLUSION

[¶17] The juvenile court's oral and written orders contained an explicitly stated reasonable efforts determination in compliance with Wyoming Statute § 14-3-440(f). The juvenile court did not err or abuse its discretion by not including a list of the reasonable efforts made by DFS in those orders. Affirmed.