# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 14

**OCTOBER TERM, A.D. 2024**

**January 30, 2025**

IN THE INTEREST OF: JF and TF, minor children,

MF,

Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-24-0134

*Appeal from the District Court of Sheridan County*
*The Honorable Benjamin S. Kirven, Judge*

***Representing Appellant:***
　　Sarah G.R. Phillips, Bighorn Mountain Law, Sheridan, Wyoming.

***Representing Appellee:***
　　Bridget Hill, Wyoming Attorney General; Christina F. McCabe, Deputy Attorney General; Wendy S. Ross, Senior Assistant Attorney General; Rebekha K. Dostal, Senior Assistant Attorney General.

***Office of the Guardian ad Litem:***
　　Joseph R. Belcher, Director; Kimberly Skoutary Johnson, Chief Trial and Appellate Counsel.

***Before FOX, C.J., and BOOMGAARDEN, GRAY, and JAROSH, JJ., and BUCHANAN, D.J.***

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BUCHANAN, District Judge.**

[¶1]    On June 22, 2020, the State of Wyoming filed a petition against MF (Mother) and JF (Father) alleging neglect of the minor children, JF and TF.  Following a shelter care hearing, the juvenile court removed the minor children from the home and placed them in foster care.  After a subsequent disposition hearing, the children remained in the legal and physical custody of the Department of Family Services (the Department), and the juvenile court adopted a permanency plan of family reunification.  Eventually, on January 19, 2024, and after a two-day evidentiary permanency hearing, the juvenile court changed the permanency plan to adoption.  This appeal by Mother arises from the juvenile court's decisions during the evidentiary permanency hearing and the change of permanency from reunification to adoption.  Finding no error, we affirm.

### ISSUES

[¶2]    Mother[1] frames the issues on appeal as follows:

> 1.    Whether the juvenile court's decision changing the permanency plan to adoption/termination and declining to adopt a concurrent plan of reunification, or otherwise order continued reasonable efforts with Mother, was supported by sufficient evidence.

> 2.    Whether the hearing procedure for the evidentiary change of permanency proceeding provided adequate due process to Mother.

The State rephrases the issues as:

> 1.    Did the juvenile court abuse its discretion when it found that the permanency plan should change from reunification to adoption only?

> 2.    Did the juvenile court violate Mother's fundamental due process rights during the evidentiary change of permanency hearing when it denied a continuance and permitted testimony from the minor children's counselor?

---

[1] The Guardian *ad Litem* generally echoes Mother's statement of the issues.

1

## FACTS

[¶3]    Mother and Father are the biological parents of two minor children, JF and TF, who were ages three years and eight months, respectively, at the time of the commencement of these events in 2020.  On June 19, 2020, the Sheridan Police Department received a report that Mother had hit JF on the side of his face with her hand and yelled that if JF "did not shut up she was going to hit his head on the f*cking wall."  During the investigation, law enforcement officers observed bruising on JF.  Additionally, they reported that the home was filthy, with an odor of excrement throughout.  The kitchen was full of old food and dirty dishes; there appeared to be vomit on the floor near TF; and the floor was covered with choking hazards, including garbage, small toys, and pennies.

[¶4]    Mother was arrested for child abuse.  At the time, Father was incarcerated, leaving no family members available to care for the minor children.  As a result, the children were placed in protective custody.  Shortly thereafter, the Sheridan County Attorney's Office filed a petition alleging that both parents abused and/or neglected the minor children.  After a combined shelter care and initial hearing, the juvenile court placed the minor children in the legal and physical custody of the Department.

[¶5]    Prior to any adjudicatory hearing, both parents signed written nolo contendere pleas.  After a dispositional hearing on November 13, 2020, the juvenile court ordered the children to remain in the legal and physical custody of the Department and adopted a permanency plan of family reunification.  During the first six months of the case, the children remained in foster care and both parents started twice-weekly supervised visitation.  Although Father was attending an outpatient treatment program, he refused substance abuse testing.  For her part, Mother initially made progress toward successfully completing her case plan.

[¶6]    At the time of the first permanency hearing in May 2021, the permanency goal remained family reunification.  The State acknowledged Mother's progress in the case, and the Guardian *ad Litem* echoed the lack of concern regarding Mother's progress.  However, by July 2021, concerns arose once again.  The parents' home failed to pass a home inspection after the caseworker observed the presence of significant hazards.  Father was present in the home, with the minor children, without approval and despite his visitation being suspended.  Father also tested positive for methamphetamine.  In fact, the Department had not approved the children being in Mother's home and learned that this incident was not the first time that Mother had the children present in her home without the Department's approval.  Father then refused further testing.

[¶7]    Over the next year, Mother's visitation was reduced due to safety concerns involving the minor children.  A caseworker noted that little progress was being made by the parents and that the parents would hang up on phone calls or leave inappropriate or agitated voicemails.  During this time, while in foster care, the minor children began to thrive and made notable progress in addressing the physical, developmental, and behavioral

issues that had plagued them historically. Father continued to refuse testing for controlled substances. Eventually, Mother again made positive progress and regained more liberal visitation with the children. By the time of the second permanency hearing in May 2022, the juvenile court continued the permanency plan of family reunification. At this time, Father's attorney was released from representation because of Father's failure to cooperate, and Father adamantly refused to test for use of controlled substances.

[¶8] Thereafter, from May 2022 to January 2023, Mother and Father had varying levels of progress. Despite minimal success, Father continued to refuse drug testing and recommended treatment. Meanwhile, Mother's visits increased in scope and frequency. The children continued to progress in foster care, with advancements in therapy, communication, and coping skills. In January 2023, despite showing some consistency in her parental efforts, Mother again started to decompensate. Among other failures, she began consistently showing up late for her visits; she allowed unauthorized contact between the minor children and Father; and she failed to schedule counseling as required. Thereafter, from February 2023 through May 2023, Mother's conduct resulted in a protocol where the minor children were not brought to visits until Mother arrived and, if Mother was more than fifteen minutes late, the visit was canceled. To her credit, Mother eventually began counseling and continued meeting with her counselor on a weekly basis.

[¶9] In June 2023, the juvenile court held a third permanency hearing. The court determined that continued reunification efforts with Father were no longer in the best interest of the minor children. With respect to Mother, the court held that the permanency plan should remain family reunification but added a concurrent plan of adoption, to which Mother did not object. At this point, the children had been in the State's legal custody for 35 consecutive months. Thereafter, additional concerns again arose regarding Mother, as she continued to regress. Mother stopped attending the children's appointments; struggled with appropriate nutrition for the minor children; allowed an individual not approved by the Department in and around her apartment; and expressed continued insecurities about paying for her housing, food, and utilities. After an overnight visit with the minor children, Mother expressed that it was a "rough night" and that she did not want the children to return for another overnight visit soon thereafter. Mother received an eviction notice soon after. Given this multitude of continued concerns, a majority of the multidisciplinary team (MDT) recommended a change in the permanency plan from reunification to adoption.

[¶10] Several of the parties then requested an evidentiary permanency hearing, which was set for November 14, 2023. Approximately five weeks before the hearing, the State subpoenaed several witnesses, including the minor children's counselor and the Department caseworker. Only days prior to the hearing, the State indicated its intent to call the children's counselor as an expert witness and provided the Department's quarterly progress report, which it intended to introduce as an exhibit. In response, Mother asserted that the State had not timely disclosed the expert testimony of the children's counselor and the progress report and requested a continuance or, in the alternative, that the juvenile court

3

preclude the admission of the evidence. After a hearing on the matter, the juvenile court prohibited the State from introducing the late-filed progress report; permitted the children's counselor to testify as an expert witness; and denied the requested continuance.

[¶11] At a two-day evidentiary permanency hearing, the juvenile court heard evidence that Mother continued to demonstrate a lack of insight into the risks posed to her special-needs children by, among other things, allowing contact with an adult male the Department had not approved and who posed safety concerns given his criminal history and substance abuse. It further heard that Mother failed to consistently attend the children's medical and therapeutic appointments. And, although Mother was actively engaged in visitation, she continued to demonstrate an inability to navigate the children's needs and any efforts to increase the level and scope of visitation were unsuccessful. Ultimately, the court stated, "this is not a case of Mother disregarding all efforts made by the Department of Family Services. Rather, the evidence presented has shown that Mother's reluctance or inability to utilize the resources and guidance provided to her during the extraordinary duration of this action is detrimental to the children."

[¶12] After taking the matter under advisement, the juvenile court issued a decision that concluded that the Department had made reasonable efforts at family reunification, which were unsuccessful after more than three years, and that the best interests of the minor children were supported by a change in the permanency plan to adoption. The juvenile court changed the permanency plan to adoption, also relieving the Department from further reunification efforts with Mother. Mother timely filed her notice of appeal.

## I.    *The juvenile court did not err by changing the permanency plan to adoption and ordering a cessation in reunification efforts with Mother.*

[¶13] Mother first contends that there was insufficient evidence to support the juvenile court's decision to change the permanency plan from reunification to adoption and to discontinue reunification efforts with Mother.

## A.    Standard of Review

[¶14] This Court has oft stated,

> When this Court is required to determine whether a juvenile court erred in finding that the permanency plan should be changed to adoption, the standard of review is abuse of discretion. *KC* [*v. State*, 2015 WY 73], ¶ 18, 351 P.3d [236,] 242 [(Wyo. 2015)]; [*In re*] *RE*, [2011 WY 170,] ¶ 10, 267 P.3d [1092,] 1096 [(Wyo. 2011)]. The Court considers the reasonableness of the juvenile court's decision considering the evidence before it. *RE*, ¶ 11, 267 P.3d at 1096. We evaluate

4

the sufficiency of the evidence against the preponderance of the evidence standard to determine whether the juvenile court's decision is supported by the evidence. *RE*, ¶ 12, 267 P.3d at 1096. We give considerable deference to the juvenile court and examine all the evidence in the light most favorable to [the successful party]. *In Int. of JW*, 2018 WY 22, ¶ 20, 411 P.3d 422, 426 (Wyo. 2018); *see also KC*, ¶¶ 18, 51, 351 P.3d at 242, 248–49. If the juvenile court's conclusion was within the bounds of reason, it did not abuse its discretion and we will not reverse. *RE*, ¶ 11, 267 P.3d at 1096.

*Int. of SW*, 2021 WY 81, ¶¶ 17–18, 491 P.3d 264, 269–70 (Wyo. 2021). *See also Matter of JPL*, 2021 WY 94, ¶ 21, 493 P. 3d 174, 180 (Wyo. 2021); *Int. of: AA*, 2021 WY 18, ¶ 33, 479 P.3d 1252, 1261 (Wyo. 2021); *In Int. of DT*, 2017 WY 36, ¶ 30, 391 P.3d 1136, 1145 (Wyo. 2017).

## B. Discussion

### 1. Sufficient evidence supported the juvenile court's determination that the Department made reasonable efforts to reunify the children with Mother, which were unsuccessful at achieving family reunification.

[¶15] Mother argues that the juvenile court's decision to change the permanency plan to one of adoption was not supported by sufficient evidence. "To change a permanency plan, the juvenile court must determine whether the current plan is in the child's best interests and whether DFS has made reasonable efforts to finalize the plan." *SW*, ¶¶ 17–18, 491 P.3d at 269–70 (citing Wyo. Stat. Ann. § 14-3-431(k)(i); *In re RE*, 2011 WY 170, ¶ 10, 267 P.3d 1092, 1096 (Wyo. 2011)). If the court determines that the permanency plan is no longer in the children's best interests and reasonable efforts have been unsuccessful, the court may change the permanency plan. *See KC v. State*, 2015 WY 73, ¶ 25, 351 P.3d 236, 243 (Wyo. 2015). "The State must justify the change in the permanency plan by a preponderance of the evidence." *KC*, ¶¶ 24–25, 351 P.3d at 243; *RE*, ¶ 12, 267 P.3d at 1096 (citing *In re HP*, 2004 WY 82, ¶ 25, 93 P.3d 982, 989 (Wyo. 2004)).

[¶16] While Mother does not specifically argue that the Department did not provide reasonable efforts to reunify her with the minor children, her argument that insufficient evidence supported the changed permanency plan implicates whether the Department made reasonable efforts at reunification and/or whether those efforts were successful. *See SW*, ¶ 17, 491 P.3d at 269 (holding that "[t]o change a permanency plan, the juvenile court must determine whether the current plan is in the child's best interests and whether DFS has made reasonable efforts to finalize the plan" (citations omitted)).

5

[¶17]   Wyo. Stat. Ann. § 14-3-440(a)(ii) mandates that the Department make reasonable efforts to preserve and reunify the family "[t]o make it possible for the child to safely return to the child's home."  Wyo. Stat. Ann. § 14-3-440(a)(ii) (LexisNexis 2023).  The statute does not define the term "reasonable efforts," but it specifies that a child's health and safety is the paramount concern when determining the reasonable efforts the Department must make.  *See* Wyo. Stat. Ann. § 14-3-440(b).  Moreover, this Court has clarified that "[r]easonable efforts are determined on a case-by-case basis" and the Department's efforts to reunify a parent with her children must be tailored to fit the family's needs.  *See In re DRS*, 2011 WY 128, ¶ 33, 261 P.3d 697, 706 (Wyo. 2011); *SW*, ¶ 20, 491 P.3d at 270.

[¶18]   Here, the Department undertook reasonable efforts to reunify Mother with the minor children over more than three years.  Those efforts included assisting Mother with parenting education and classes, employment, safe housing and transportation, individual therapy (for Mother and children), medical services, in-home parenting, drug testing, visitation (including coached parenting visitation), a parental capacity evaluation, parenting skills specific to the children's needs, behavioral therapy for the minor children, and weekly contact with the Department.  Throughout this time, the Department tailored its efforts at reunification to meet the specific needs of this family.  *See SW*, ¶ 20, 491 P.3d at 270.  The record is replete with documentation of the Department's contacts with the family over the course of the case, including participation in MDT meetings; teaching Mother sign language to communicate with JF; working in conjunction with wraparound services; connecting Mother to resources to provide items for nutrition and in-home meal preparation; facilitating home-based services to prepare for the children's return; participating in the juvenile court proceedings; developing and reviewing case plans; developing safety plans; facilitating a parental capacity evaluation for Mother; facilitating counseling services for Mother and the minor children; arranging visitation; facilitating communication with foster parents and other providers; and aiding with medical, educational, and developmental appointments for the minor children.

[¶19]   Despite these efforts, Mother was inconsistent in achieving success.  While, at times, Mother was effective in making some meaningful progress, at other times, she regressed and exhibited significant shortcomings in completing her case plan that warranted the children remaining in foster care.  For example, despite over 244 scheduled visits between Mother and the minor children, Mother continued to experience significant difficulties during visits.  Facilitators had to coach Mother in order to ensure a "higher level of safety, emotional safety" for the minor children, and the children's dysregulation increased markedly during visits with Mother, leading to outbursts and self-harm.  In fact, the juvenile court recognized barriers to reunification to include "a regression in behaviors by the children, Mother's inability to address the behaviors, Mother's continued involvement with a man who has been deemed unsafe by [the Department], unstable housing, and lack of stable income."  At the end of the day, reunification efforts were unsuccessful.

[¶20] Mother now argues that the juvenile court failed to consider factors beyond her control that interfered with successful reunification. She points primarily to Father's lack of progress and unwillingness to engage in services and argues that a relocation in the minor children's placement to a different home impaired reunification. There is no evidence that the juvenile court failed to consider these factors alongside the Department's reunification efforts. The court was presented with the entirety of the evidence, weighed the reunification efforts, and determined they were reasonable but unsuccessful. While outside factors may have posed some difficulty, they do not negate Mother's repeated failures. Despite the efforts of the Department, foster parents, and other service providers who worked with Mother to address each barrier, Mother remained unable to safely, consistently, and appropriately navigate the intricacies of parenthood in a manner that would support reunification with her children. She defied restrictions regarding when and where she could care for the minor children and who was safe to be around them. She never developed the skill of protecting her children from potentially dangerous people and situations. She failed to engage in expected therapy and counseling until almost three years into the case. She failed to heed the Department's recommendations with respect to parenting skills, safety, structure, nutrition, and consistency as would benefit the minor children. In fact, Mother acknowledged that she remained unable to care for the children on her own and unable to parent them safely, particularly in light of their special needs.

[¶21] After over three years of reasonable efforts, reunification could not be achieved and was not anticipated in the near future. The juvenile court found that Mother was either reluctant or unable to use the various resources offered to her as part of reunification efforts. While Mother demonstrated occasional limited success and some willingness to utilize the resources available, she did not take other opportunities presented to her and did not complete other aspects of her case plan that DFS had tailored to the family's needs. "[A] parent's failure to take advantage of available services, or to meaningfully participate in a case plan developed by DFS with [a parent's] input, is persuasive evidence that reasonable rehabilitative efforts have been unsuccessful." *SW*, ¶ 20, 491 P.3d at 270 (quoting *In Int. of JW*, 2018 WY 22, ¶ 21, 411 P.3d 422, 426 (Wyo. 2018)). The juvenile court did not abuse its discretion in changing the permanency plan to adoption because it had sufficient evidence to conclude that the Department had made reasonable, but ultimately unsuccessful, efforts to reunify Mother with the minor children.

> **2. Sufficient evidence supported the juvenile court's determination that it was in the minor children's best interests to change the permanency plan to adoption.**

[¶22] Mother's argument that the change in the permanency plan to adoption was contrary to the children's best interests consists of one paragraph, without citation to the record or to legal authority:

The juvenile court also determined that it was in the best interests of the children to change the permanency plan to adoption and cease reunification efforts with Mother. These determinations regarding best interests of the children are not supported by sufficient evidence. The juvenile court additionally found that developmental delays with the minor children arose after placement with the current foster placement, but the record in this case is clear that these issues have been there since the beginning of the case and Mother has advocated for her children to receive necessary therapies and interventions throughout this case.

[¶23] However, the juvenile court clearly articulated its reasons for finding that the best interests of the minor children supported a transition of the permanency plan to adoption. In addition to providing specific findings, the court concluded:

Simply put, the children in this matter require permanency after more than three (3) years of foster care so that they can continue to benefit from the consistent stability and care that the foster parents have provided. Addressing the children's developmental delays and other needs with the [foster] family is in their best interest and Mother's right to parent her children must yield.

This conclusion was supported by the evidence at the evidentiary permanency hearing and the record as a whole. Based on the record, and without cogent argument from Mother to the contrary, this Court cannot conclude that the juvenile court otherwise erred in its findings.

### 3. The juvenile court's decision to discontinue reunification efforts with Mother was supported by Wyoming law.

[¶24] To the extent Mother argues that the juvenile court erred in its decision to cease reunification efforts between her and the minor children, her argument must fail. Wyoming law does not require the continuation of reasonable efforts toward reunification after a change in permanency to adoption. Rather, Wyo. Stat. Ann. § 14-3-440(d) provides,

[i]f continuation of reasonable efforts . . . is determined to be inconsistent with the permanency plan for the child, **reasonable efforts shall be made for placement of the child in a timely manner in accordance with the permanency plan**, and to complete the steps necessary to finalize the permanent placement of the child.

8

Wyo. Stat. Ann. § 14-3-440(d) (emphasis added). The statute expressly "recognizes that . . . reunification efforts inconsistent with the permanency plan may be discontinued." *In re NDP*, 2009 WY 73, ¶ 21, 208 P.3d 614, 619 (Wyo. 2009).

[¶25] Although "the decision to change a permanency plan must be supported by sufficient evidence, the same is not true for the decision to discontinue reasonable efforts following a change in plan." *Int. of AM*, 2021 WY 119, ¶ 10, 497 P.3d 914, 918 (Wyo. 2021). Even still, sufficient evidence existed in this case to support the juvenile court's conclusion that reasonable efforts should cease, as reasonable efforts at reunification had been unsuccessful; the permanency goal had been changed to adoption; and reunification no longer served the minor children's best interests. Reasonable efforts to reunify the children with Mother were inconsistent with the permanency plan of adoption. Therefore, the juvenile court's order discontinuing reunification efforts comports with Wyoming law. *See AM*, ¶ 12, 497 P.3d at 919; Wyo. Stat. Ann. § 14-3-440(d).

## II. *Mother's fundamental due process rights were not violated by the denial of a continuance of the permanency hearing or by the juvenile court's decisions with respect to the admissibility of evidence.*

[¶26] Mother next asserts that the juvenile court denied her due process when it denied her request for a continuance of the permanency hearing and for exclusion of the minor children's counselor's testimony. She also argues that the juvenile court denied her due process when it did not apply the Wyoming Rules of Evidence to the evidentiary hearing.

### A. The juvenile court's decision to deny Mother's request for a continuance of the permanency hearing was not in error.

#### 1. Standard of Review

[¶27] This Court has recognized, as a long-standing rule, that

> [t]he trial court has broad discretion in granting or denying a motion for continuance, and absent a manifest abuse of discretion, the reviewing court will not disturb such a ruling. To find an abuse of discretion, the refusal must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove **actual prejudice and a violation of his rights**. Upon review, we look at the peculiar circumstances of the case and the reasons presented to the trial judge at the time of the request.

9

*Wunsch v. Pickering*, 2008 WY 131, ¶ 15, 195 P.3d 1032, 1038–39 (Wyo. 2008) (citations omitted) (emphasis added). *See also Sims v. State*, 530 P.2d 1176, 1181 (Wyo. 1975). "An abuse of discretion is that which shocks the conscience of the court and appears so unfair and inequitable that a reasonable person could not abide it." *Waldrop v. Weaver*, 702 P.2d 1291, 1293 (Wyo. 1985) (citing *Paul v. Paul*, 616 P.2d 707, 714 (Wyo. 1980)). "[T]he ultimate issue is whether or not the court could reasonably conclude as it did." *Id.* (quoting *Martinez v. State*, 611 P.2d 831, 838 (Wyo. 1980)).

## 2. Discussion

[¶28]   Mother contends that her due process rights were violated when the court failed to grant her a continuance. The impetus for her request commenced when the Department filed a quarterly progress review report less than the required five business days before the permanency hearing.[2]   Additionally, although the State had subpoenaed the minor children's counselor several weeks in advance of the hearing, just days before the hearing the State indicated its intention to call the minor children's counselor as an expert witness, without previously designating her as such. As a result, one day prior to the scheduled permanency hearing, Mother requested a continuance, arguing that the State's "last-minute expert designation and report disclosure" did not allow her sufficient time to prepare for trial, thereby denying her due process. In response, the juvenile court denied Mother's request for a continuance and her alternative request that the court "bifurcate" the proceedings by allowing her to present her case another day.[3]   Instead, the court prohibited the State from using the late-filed report as an exhibit but allowed the Department's caseworker to testify regarding information in the report. The Court also permitted the State to call the children's counselor as an expert witness.

[¶29]   To determine whether the juvenile court abused its discretion by denying Mother's request for a continuance, particularly in light of its evidentiary rulings, this Court must consider, first, whether Mother proved actual prejudice and, second, whether she proved a violation of her rights. *See Wunsch*, ¶ 15, 195 P.3d at 1038–39. We find that Mother proved neither: First, Mother failed to demonstrate actual prejudice. The evidence that was received, by way of testimony from the Department caseworker and the children's counselor, consisted of information that was available to Mother throughout the case. The Department's progress report, which was not admitted into evidence, was merely a compilation of what had occurred from August 2023 until the permanency hearing, of which Mother would have been aware, and likewise, Mother had access to any information from the children's counselor and the caseworker, both of whom participated throughout

---

[2] Wyo. Stat. Ann. § 14-3-427(o) provides that "[f]ive (5) business days prior to each review hearing, the multidisciplinary team shall file with the court a report updating the multidisciplinary team report, the multidisciplinary team's recommendations and the department case plan." Wyo. Stat. Ann. § 14-3-427(o).
[3] Ultimately, however, a de facto bifurcation occurred, as time constraints resulted in the juvenile court scheduling a second day for the permanency hearing, which occurred approximately one week after the first day of the hearing and resulted in allowing Mother additional time to prepare for the hearing.

the case in MDT meetings. Mother already had knowledge of the substance of this evidence from her involvement in the case by virtue of being Mother to the minor children. She was not prejudiced by its late disclosure nor by its admission as evidence.

[¶30]   Further, Mother's request for additional time to prepare ultimately was afforded to her when the juvenile court extended the permanency hearing to a second day, roughly one week following the commencement of the first day of the hearing. This one-week delay permitted Mother the time she requested to prepare for trial. During this time, she had access to the progress report, which was never received into evidence, and access to the children's counselor and the Department caseworker. Mother ultimately had adequate time to prepare even in light of the late disclosure of the potential exhibit and the expert testimony. She has not shown how the court's denial of her request for a continuance resulted in actual prejudice nor has she demonstrated that she was prejudiced by the late notice of the progress report as a potential exhibit or the late classification of the children's counselor as an expert witness.

[¶31]   Second, Mother has not shown how her fundamental due process rights were impermissibly affected by the juvenile court's decision to allow the testimony of the caseworker and the children's counselor. The "question of whether an individual was afforded constitutional due process is one of law, which we review de novo." *Matter of NRAE*, 2020 WY 121, ¶ 12, 472 P.3d 374, 377–78 (Wyo. 2020) (quoting *Booth v. Booth*, 2019 WY 5, ¶ 11, 432 P.3d 902, 907 (Wyo. 2019)). This Court has explained the standard as follows: "The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness." *NRAE*, ¶ 12, 472 P.3d at 377 (quoting *In re MC*, 2013 WY 43, ¶ 29, 299 P.3d 75, 81 (Wyo. 2013)). "The touchstones of due process are notice and the opportunity to be heard, which must be appropriate and proportional to the nature of the case." *Id.* (citing *KC*, ¶ 16, 351 P.3d at 241).

[¶32]   Here, although the Department's late designated progress report was excluded from evidence, the caseworker testified to what was contained in the report, which consisted of information about the case that occurred since August 2023. Additionally, the children's counselor was permitted to testify as an expert witness, despite late disclosure of that designation. In an analogous situation, this Court opined:

> Generally, due process requires notice and an opportunity to be heard. *Matter of TJH*, 2021 WY 56, ¶ 10, 485 P.3d 408, 412 (Wyo. 2021). "The required process varies depending upon 'the nature of the proceeding and the interests involved.'" *Interest of VS*, 2018 WY 119, ¶ 28, 429 P.3d [14,] 22 [(Wyo. 2018)] (citation omitted). Parents are entitled to an evidentiary hearing when a proposed "change in permanency

11

plan includes adoption or permanent placement other than reunification." *KC v. State*, 2015 WY 73, ¶ 42, 351 P.3d 236, 247 (Wyo. 2015). When a parent requests an evidentiary hearing,

> [t]he parent requesting a hearing is entitled to put the State to its proof, to be present, to confront and cross-examine witnesses, to call witnesses, and to present a case in support of a continued plan of reunification or dismissal of the case. Hearsay evidence that is probative, trustworthy and credible may be received at the hearing. . . . [A]t the permanency hearing[,] the State has the burden of establishing by a preponderance of the evidence that a change in the permanency plan is in the best interests of the child.

> *Interest of VS*, 2018 WY 119, ¶ 29, 429 P.3d at 22–23 (quoting *KC*, 2015 WY 73, ¶ 44, 351 P.3d at 247).

*AM*, ¶¶ 16–19, 497 P.3d at 920–21. Although the State's production and designation of the progress report was untimely[4] and resulted in insufficient time for Mother to review the exhibit, under the circumstances, this untimeliness did not deny Mother due process. This Court reaches the same conclusion with respect to the testimony of the Department caseworker and the children's counselor. As the hearing unfolded, over the course of two days separated by one week during which Mother had additional time to prepare, Mother had the opportunity to call witnesses and present a case in support of a continued plan of reunification. Further, even before the hearing, Mother had personal knowledge of and access to the information that both the caseworker and the children's counselor testified about through her involvement in the juvenile case. She also gained additional time after the State's presentation of evidence to prepare her own presentation of evidence. Under the circumstances, this Court cannot conclude that Mother had no ability to meaningfully address the information contained in the challenged testimony (or report) because the testimony consisted of knowledge of events that had occurred during the life of the juvenile case about which Mother knew.

[¶33] Mother received the appropriate due process because she had a meaningful opportunity to be heard regarding the information involving the testimony from the Department caseworker (even to the extent it duplicated that contained in the progress report) and the children's counselor. *See Int. of SK*, 2024 WY 25, ¶ 62, 544 P.3d 606, 623

---

[4] This Court cautions the Department and the State to heed such deadlines. Failure to do so may well result in exclusion of evidence crucial to the juvenile court's ability to make a fully informed decision and, at the very least, imposes an unwarranted burden upon the parties and the court.

(Wyo. 2024) (no denial of fundamental fairness where Mother was not restricted in her ability to adequately prepare a defense, cross-examine, or participate in a meaningful way); *AM*, ¶ 19, 497 P.3d at 921 (holding that Mother's due process rights were not violated by untimely disclosed evidence because she had an opportunity to cross-examine and call her own witnesses at the permanency hearing). Therefore, the juvenile court did not violate Mother's due process rights by denying a continuance and admitting the challenged testimony.

**B.      The juvenile court afforded Mother due process by conducting the evidentiary permanency hearing in accordance with Wyoming law.**

[¶34]  Finally, Mother suggests that, in order to protect her due process rights, this Court should adopt a new approach to evidentiary permanency hearings that would require adherence to the Wyoming Rules of Evidence.

### 1.  Standard of Review

[¶35]  "The question whether the juvenile court afforded an individual due process is one of law subject to de novo review." *SK*, ¶ 58, 544 P.3d at 622 (citation omitted). "The party claiming an infringement of [her] right to due process has the burden of demonstrating both that [she] has a protected interest and that such interest has been affected in an impermissible way." *Id.*

### 2.  Discussion

[¶36] Wyoming Rule of Evidence 1101(b)(3) clarifies that the Wyoming Rules of Evidence, other than those with respect to privileges, do not apply to "juvenile proceedings other than adjudicatory hearings[.]" W.R.E. 1101(b)(3). As this Court has made clear, when a parent requests an evidentiary permanency hearing,

> [t]he parent requesting a hearing is entitled to put the State to its proof, to be present, to confront and cross-examine witnesses, to call witnesses, and to present a case in support of a continued plan of reunification or dismissal of the case. Hearsay evidence that is probative, trustworthy and credible may be received at the hearing. Finally, we reiterate that at the permanency hearing the State has the burden of establishing by a preponderance of the evidence that a change in the permanency plan is in the best interests of the child. Although these procedures are not as protective of parental rights as those which must be employed in a later TPR hearing, they provide realistic and meaningful protection against an erroneous decision at a critical point in the process. They are also

13

consistent with W.R.E. 1101, as evidentiary rules need not be applied with full vigor at this stage of the juvenile court proceeding. We therefore conclude that Rule 1101 is not unconstitutional as argued by Appellant.

*KC*, ¶ 44, 351 P.3d at 247.

[¶37] In arguing that the Wyoming Rules of Evidence should be adopted as applicable to evidentiary permanency hearings, Mother merely states, "If the rules of evidence are not followed in an evidentiary hearing where the burden of proof is only a preponderance, that level of proof gets watered down." She offers no further cogent argument or legal authority in support of this proposition or her argument.

[¶38] This Court already has concluded that due process does not require the application of the Wyoming Rules of Evidence to evidentiary permanency hearings. Mother has not provided this Court with sufficient grounds to overrule its precedent vis-à-vis the applicability of the Wyoming Rules of Evidence to permanency hearings, and this Court declines to do so.

## CONCLUSION

[¶39] The juvenile court did not err when it changed the permanency plan from reunification to adoption and allowed the Department to cease further reunification efforts with Mother. Further, the court did not err in denying Mother's request for a continuance of the permanency hearing or in its evidentiary decisions related thereto, and Mother's due process rights were not compromised, nor was she prejudiced, thereby. Finally, this Court declines to adopt Mother's request for a change in procedures for evidentiary permanency hearings to require compliance with the Wyoming Rules of Evidence.

[¶40] Affirmed.